This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, James Stecion, appeals his conviction in the Akron Municipal Court based upon the denial of his motion to suppress evidence. We affirm.
 I.
On the morning of December 7, 2000, Jerry Schall, a road foreman for Richfield Township, was salting Alger Road, Summit County. Just as Mr. Schall was going to adjust the level of salt in the back of his truck, he noticed a car following closely behind him. When he pulled over to the side of the road to push more salt into the augur of the truck, Mr. Schall motioned for Mr. Stecion, the driver, to go around the salt truck, but Mr. Stecion continued to sit behind the truck. However, once Mr. Schall got back in the truck and pulled onto the road, Mr. Stecion sped around the truck and slammed on his brakes. Next, Mr. Stecion got out of his car, approached Mr. Schall, and pointed his finger at Mr. Schall while stating "You're dead meat." He then requested to talk to someone named Scott. Mr. Schall, who did not know to whom Mr. Stecion was referring, decided to radio for assistance from Officer Scott Dressler, a police officer of Richfield Township.
When Officer Dressler arrived at the scene, he observed the salt truck and Mr. Stecion's car parked alongside the road with the engine still running. Officer Dressler approached Mr. Stecion's car to talk with him. He noticed that Mr. Stecion's eyes were red and glassy and that his stare was blank as he responded with slurred speech to the officer's questions. Officer Dressler asked Mr. Stecion if he had been drinking. When Mr. Stecion replied that he had not, Officer Dressler asked him if he would perform the walk-and-turn test which required him to walk along the yellow line of the road. At the hearing, the state admitted into evidence a videotape of Mr. Stecion's walk-and-turn test. Officer Dressler testified that Mr. Stecion stumbled after walking only one and one-half steps. Further, he stated that Mr. Stecion put his hand on the line and took only four steps at the most before he informed the officer that he did not want to do any more tests. Mr. Stecion agreed to do a breathalyzer test when he was asked by Officer Dressler, and, at that point, the officer placed Mr. Stecion under arrest pursuant to R.C.4511.19(A)(1), operating a vehicle while under the influence of alcohol. Officer Dressler testified that, once Mr. Stecion was placed in the police cruiser, he noticed the odor of alcohol emanating from Mr. Stecion.
Officer Scott Barb, a police officer for Bath Township and a qualified operator of the BAC Datamaster machine, offered assistance to Officer Dressler in administering the breathalyzer test to Mr. Stecion. Officer Barb testified that Mr. Stecion consented to a breathalyzer test after he was read the Ohio Implied Consent Form 2255. The test produced a result of .295, and, consequently, Mr. Stecion was cited for a violation of R.C. 4511.19(A)(6). The first charge under R.C. 4511.19(A)(1) was dismissed.
Detective Debbie Yarcheck of the Bath Police Department testified that she is the senior operator of the BAC Datamaster machine. She explained that the BAC Datamaster used to test Mr. Stecion had been in service for twelve years and had last been calibrated on November 29, 2000, 187 hours before Mr. Stecion's test. Detective Yarcheck testified that she usually checks the calibration on the machine every Wednesday but that she did not get to do so on December 6, 2000 because she was out of town. She also stated that she did not get to check the following week either, on December 13, because she was at a court hearing. Detective Yarcheck testified that, during the next week, there was an electrical storm during which lightning destroyed computer chips on the BAC Datamaster, forcing the police department to get an entirely new machine.
On January 30, 2001, Mr. Stecion filed a motion to suppress, claiming that the arrest was unlawful, as were the results of the breathalyzer test. An evidentiary hearing on Mr. Stecion's motion to suppress was held on March 2 and 30, 2001. The trial court denied Mr. Stecion's motion on May 17, 2001, ruling that there was probable cause to arrest and that there was both substantial compliance and lack of prejudice in the application of the breathalyzer test. On May 21, 2001, Mr. Stecion entered a plea of no contest; the trial court found him guilty under R.C.4511.19(A)(6) and sentenced him accordingly. This appeal followed.
 II.
Mr. Stecion asserts two assignments of error. We will discuss them each in turn.
 A. First Assignment of Error THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE BREATHALYZER TEST RESULTS BECAUSE, SUBSEQUENT TO NOVEMBER 29, 2000, AN INSTRUMENT CHECK WAS NEVER PERFORMED ON THE BAC DATAMASTER MACHINE, WHICH IS IN COMPLETE CONTRAVENTION OF SECTION 3701-53-04(A) OF THE OHIO ADMINISTRATIVE CODE AND OF SECTION 4511.19(D)(1) OF THE OHIO REVISED CODE.
Mr. Stecion argues that the trial court erred when it denied his motion to suppress the breathalyzer test results. Specifically, Mr. Stecion asserts that the breathalyzer test results should have been suppressed because, subsequent to his breathalyzer test on November 29, 2000, an instrument check was not performed on the BAC Datamaster machine as required by R.C. 4511.19(D)(1) and Ohio Adm. Code 3701-53-04(A). We disagree.
Initially, we note that an appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. When considering a motion to suppress, a trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. State v. Smith (1997), 80 Ohio St.3d 89, 105. Thus, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."Ornelas v. United States (1996), 517 U.S. 690, 699, 134 L.Ed.2d 911,920. Accordingly, we will accept the factual determinations of the trial court so long as they are supported by competent and credible evidence; however, without deference to the trial court's conclusion, we will determine "whether, as a matter of law, the facts meet the appropriate legal standard." State v. Curry (1994), 95 Ohio App.3d 93, 96.
R.C. 4511.19(D)(1) provides that, in a criminal prosecution relating to operating a vehicle with a prohibited concentration of alcohol in a bodily substance of the defendant, "[s]uch bodily substance shall be analyzed in accordance with methods approved by the director of health[.]" Ohio Adm. Code 3701-53-04(A) states, in pertinent part:
 A senior operator shall perform an instrument check on approved evidential breath testing instruments * * * no less frequently than once every seven days in accordance with the appropriate instrument checklist * * *. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
Results of alcoholic concentration tests are admissible upon a showing of substantial compliance with the regulations of the administrative code. Defiance v. Kretz (1991), 60 Ohio St.3d 1, 3; see, also, State v.Brown (1996), 109 Ohio App.3d 629, 632. Once substantial compliance has been demonstrated, the defendant must show that he would be prejudiced by anything less than strict technical compliance. Brown,109 Ohio App.3d at 632.
In Pioneer v. Martin (1984), 16 Ohio App.3d 478, 479, the court held:
 [A]s long as the proper pre-test calibration of the intoxilyzer machine occurs, the test result is admissible as evidence. Thus, the question regarding a subsequent calibration * * * is no longer an issue. Likewise, a proper calibration within seven days of a particular test is sufficient and renders that test in compliance with rules and regulations of the Ohio Department of Health.
In Pioneer, the court relied upon Bryan v. Hunter (May 18, 1984), Williams App. No. WMS-84-2, unreported, 1984 Ohio App. LEXIS 9862, at *3, in which the court held that intoxilyzer test results should not be excluded merely because the subsequent calibration occurred more than seven days following the defendant's test.[1] The court in Bryan noted that the reason for the calibration requirement is to ensure that the "pre-test calibrations occur, as to a particular test, within seven days of the test." Id.
This court further elaborated that "the purpose of the seven-day calibration requirement is to ensure that the accuracy of the particular breath analysis machine has been pre-tested within seven days of the test given to the accused." State v. Hostettler (Feb. 17, 1988), Wayne App. No. 2308, unreported, at 2. Significantly, in Richfield v. Melkon (Sept. 11, 1991), Summit App. No. 15002, unreported, at 5, this court held that calibration intervals exceeding seven days did not affect an accused's result when his test was administered within seven days after an accurate calibration. Noting that the accused presented no evidence that the machine was not accurate at the time of his test, this court found substantial compliance with Ohio Adm. Code 3701-53-04(A) despite the fact that a subsequent calibration had not occurred in seven days. Id.; see, also, State v. Madden (Mar. 21, 1984), Summit App. No. 11396, unreported, at 2. Similarly, in State v. Wymer (Apr. 24, 1985), Wayne App. No. 1958, unreported, at 2-3, this court held that an accused was not prejudiced by the state's failure to provide evidence of a subsequent calibration test following the accused's test. Again, this court noted that the results of the test were admissible because the accused had been tested within one week of the calibration test which had been admitted into evidence. Id. at 3.
In the case at bar, Officer Barb, a qualified operator of the BAC Datamaster machine, administered the breathalyzer test to Mr. Stecion. Such test produced a result of .295. Detective Yarcheck testified that the BAC Datamaster used to test Mr. Stecion had been in service for twelve years and had last been calibrated on November 29, 2000, 187 hours before Mr. Stecion's test. Detective Yarcheck further testified that she usually checks the calibration on the machine every Wednesday but that she did not get to do so during the two weeks following the November 29th test because she was out of town the first week and at a court hearing the second week. Detective Yarcheck testified that, following those two weeks, there was an electrical storm during which lightning destroyed computer chips on the BAC Datamaster. Consequently, the police department was forced to obtain an entirely new machine and was unable to perform a subsequent calibration test following Mr. Stecion's test.
Mr. Stecion cites to Upper Arlington v. Kimball (1994),95 Ohio App.3d 630, as authority which requires this court to suppress the results of the breathalyzer test. Kimball, however, is distinguishable from the present situation, as the issue in that case was whether the results of a breathalyzer test should be suppressed when the subsequent calibrations did not meet the requirements of the Ohio Administrative Code. In Kimball, the court held that, as the machine was not in working order and that a malfunction could have occurred at any time subsequent to the initial calibration, the results of the accused's breathalyzer test should be suppressed. Id. at 633. In the instant case, however, Mr. Stecion presented the court with no evidence of any malfunctions of the BAC Datamaster either at the time his test was given or when the machine was calibrated 187 hours earlier. See Melkon, supra, at 5. Accordingly, as Mr. Stecion was tested within 192 hours of the pre-test calibration, we find that the breathalyzer test was in compliance with the rules and regulations of the Ohio Department of Health. As such, Mr. Stecion is unable to demonstrate any prejudice by the failure to perform a subsequent instrument check. Mr. Stecion's first assignment of error is overruled.
 B. Second Assignment of Error THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO SUPPRESS ALL EVIDENCE OBTAINED AS A RESULT OF DEFENDANT-APPELLANT'S ARREST BECAUSE DEFENDANT-APPELLANT'S ARREST WAS NOT BASED ON PROBABLE CAUSE AND THUS IT VIOLATED HIS RIGHTS UNDER THE FOURTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Mr. Stecion asserts that the trial court erred in denying his motion to suppress. Specifically, Mr. Stecion contends that Officer Dressler lacked probable cause to arrest him because the weather conditions were not conducive to yielding accurate results on the walk-and-turn test and because the officer did not detect the odor of alcohol until after Mr. Stecion was arrested and placed in the police cruiser. We disagree.
As a general rule, "determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Ornelas, 517 U.S. at 699,134 L.Ed.2d at 920. Whereas, "[a]t a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Smith (1991), 61 Ohio St.3d 284, 288. As stated in the first assignment of error, we will accept the factual determinations of the trial court so long as they are supported by competent and credible evidence. Curry, 95 Ohio App.3d at 96. However, without deference to the trial court's conclusion, we will determine whether the facts meet the appropriate legal standard as a matter of law. Id.
The Ohio Supreme Court, in State v. Homan (2000), 89 Ohio St.3d 421,427, stated:
 In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. In making this determination, [a court] will examine the "totality" of facts and circumstances surrounding the arrest.
(Citations omitted).
Mr. Stecion avers that, based on the totality of the circumstances, Officer Dressler lacked probable cause to conduct his arrest. Specifically, Mr. Stecion contends that slurred speech, red and glassy eyes, and blank stare, without being accompanied by the odor of alcohol, is insufficient to form the basis for probable cause to arrest. In addition, Mr. Stecion argues that the weather conditions at the time of the test were not conducive to yielding reliable results in the walk and turn test, and, thus, the results of the test could not support the finding of probable cause. We disagree.
In the case at bar, Officer Dressler testified that he responded to a radio call made by Mr. Schall, who asked for assistance in dealing with a man who was threatening him. The record reflects that Officer Dressler was informed by Mr. Schall that Mr. Stecion had refused to go around the salt truck when it was pulled to the side of the road. Instead, Mr. Stecion waited until the truck was back on the road to pass the vehicle and then slammed on the brakes. Officer Dressler was also told that Mr. Stecion had gotten out of his vehicle and threatened Mr. Schall.
Once Officer Dressler arrived at the scene, he observed Mr. Stecion sitting in the driver's seat in a car stopped on the side of the road with the engine running. Officer Dressler approached him to discuss the incident. Officer Dressler testified that Mr. Stecion's eyes were red and glassy and that his stare was blank as the officer talked to him. Moreover, Officer Dressler stated that Mr. Stecion spoke in a slurred manner. Officer Dressler also stated that Mr. Stecion agreed to take the walk-and-turn test but stumbled after walking only one and one-half steps. Additionally, Mr. Stecion put his hand on the yellow line to balance himself and only walked four steps before he informed the officer that he did not want to do any more tests.
This court reviewed the videotape of Officer Dressler's encounter with Mr. Stecion, which was admitted into evidence at the suppression hearing. Though much of Mr. Stecion's actions were blocked from the camera's view, one can see Mr. Stecion staggering from the car and walking in a very unstable manner toward the yellow line. The road appears clear of snow, and the officer had no problem either walking or performing the walk-and-turn test along the yellow line to provide an example for Mr. Stecion. Mr. Stecion, on the other hand, was unable to perform the test and, at one point, seemed to topple over. When the officer later escorted him back to the police cruiser, Mr. Stecion again staggered in an unbalanced manner toward the vehicle.
Based on the totality of the circumstances, we find that the officer had probable cause to arrest Mr. Stecion. While Mr. Stecion asserts that the weather conditions were not conducive to yielding effective results in the walk-and-turn test, the videotape reveals that the officer performed the test without any problems and that Mr. Stecion's unstable manner of walking was not caused by the weather. Additionally, even without detecting the odor of alcohol until Mr. Stecion was in the police cruiser, the "totality" of the facts and circumstances surrounding the arrest support a finding of probable cause. See, e.g., State v. Glime
(Oct. 31, 2001), Lorain App. No. 01CA007856, unreported, at 4-5 (holding that the arresting officer had sufficient knowledge to have probable cause to arrest based upon the defendant's driving and appearance, when the officer did not mention detecting the odor of alcohol emanating from the defendant's person). Accordingly, we find that the evidence presented at the suppression hearing was sufficient to establish probable cause to arrest Mr. Stecion for driving under the influence of alcohol. Therefore, we hold that the trial court did not err in denying Mr. Stecion's motion to suppress. Mr. Stecion's second assignment of error is overruled.
 III.
Appellant's assignments of error are overruled. The judgment of the Akron Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
CARR, J., WHITMORE, J. CONCUR.
[1] Several of the cases in this opinion refer to a seven day testing period. Such cases were decided prior to the 1997 amendment to Ohio Adm. Code 3701-53-04(A) which allowed calibration testing to be conducted up to 192 hours after the previous instrument check.