JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Ann T. Mannen denying appellant Demond Duncan's motion to suppress. He contends there was no permissible justification for the search of a small leather case which was found to contain a small scale and six baggies containing quantities of marijuana. We reverse and remand.
From the record we glean the following: On January 18, 2000, four Federal Bureau of Investigation agents went to the home of Jorge Webster on West 93rd Street in Cleveland, to arrest him under a Federal warrant. When the agents entered the home, Special Agent Clyde E. Wallace, III and Agent Oliver stayed on the first floor to monitor and control three people, who were seated on a living room couch during the search. The two other agents arrested Webster on the third floor.
Special Agent Wallace claimed that the scene on the first floor was calm and in control and that, while the arrest warrant executed on Webster may have involved allegations of drug activity, the building was an actual residence rather than a place used exclusively to house or facilitate drug activity. While Webster was being arrested, Duncan claimed that he and Alvin Berry stopped at the home to use Webster's telephone because Duncan's truck was overheating; the State, however, theorized that he had come to the home in order to sell Webster drugs.
Berry remained in the truck while Duncan exited and approached the house with a small leather bag described, by Special Agent Wallace, as similar to a shaving kit. The Special Agent permitted Stephanie Sherwood, Webster's girlfriend, to speak with Duncan outside the house and to allow him to enter, although the agents did not know who Duncan was.
Duncan maintained that, as he followed Sherwood through a side door into the home, Special Agent Wallace, with gun drawn, ordered him to halt; he then holstered his weapon and led Duncan by the arm into the kitchen, where he seated him in a chair. Special Agent Wallace, however, claimed that he did not draw his weapon, rather, Duncan froze upon seeing him. As Special Agent Wallace, at the time, was wearing a dark raincoat with the initials FBI prominently displayed in orange, he testified that he would have been immediately identifiable as law enforcement. In any event, all witnesses agreed that when Duncan saw the agents, he began to tremble, became weak and nervous, and had to be helped to a nearby kitchen chair to sit down, still holding his small leather bag.
As Duncan was seated in the kitchen, Special Agent Wallace claimed he asked him if he could look in his leather bag, and that Duncan agreed. Duncan, however, although somewhat unclear as to whether any agent had asked him if he could search his bag, made it clear at hearing that he never consented to its search. He maintained that, when he entered the home, the agents immediately patted him down, sat him in the kitchen chair and handcuffed him to it. He testified that once he was seated in — and handcuffed to — the chair, Agent Oliver took the bag from the kitchen table and opened it, discovering the marijuana and scale. It was undisputed that Duncan had been in the home for no more than a minute and a half before he was seated in the kitchen and the bag was searched.
Following the search, Special Agent Wallace claimed he asked Duncan if there was any other contraband in his truck, and he admitted that there was a gun in the truck's glove box and possibly additional drugs in an ashtray. An Agent at the scene contacted the Cleveland Police Department and Patrolman Daniel Rutt and his partner formally placed Duncan under arrest, frisked him, discovered a bag containing a significant amount of crack cocaine in Duncan's coat pocket and found a loaded nine-millimeter handgun in the glove box of the truck. Berry was also searched, and several bags of marijuana were recovered from his person.
Duncan was charged in Case #391436 in four counts:
 (1) Preparation of Drugs for Sale (Marijuana), a felony of the fifth degree; (2) Possession of Drugs (Crack Cocaine), a felony of the first degree;(3) Preparation of Drugs for Sale (Crack Cocaine), a felony of the fourth degree; and,(4)Possession of Criminal Tools, a felony of the fifth degree. He was subsequently indicted in Case #396955, and charged with one count of carrying a concealed weapon, a felony of the fourth degree, and one count of having a weapon while under a disability, a felony of the fourth degree.
Duncan filed a motion to suppress the marijuana and scale discovered in his bag as the product of an illegal search, and to suppress the crack cocaine and handgun as the product of an illegal search pursuant to a faulty arrest in regard to the marijuana. He argued that he did not consent to the search of his bag and no other exception to theFourth Amendment's prohibition against warrantless searches would have justified the search. The State contended that he had, in fact, consented to the search of his bag, but that, regardless, the circumstances of his entry into Webster's home gave the FBI agents cause to search him for the limited purpose of discovering if he was armed.
At the conclusion of oral hearing, the judge stated on the record that she was not going to find justification for the search based on consent, and following further briefing by the parties on the issue of protective searches, confirmed her ruling at hearing, by journal entry, that the search of Duncan's leather bag was justified as a limited protective search for weapons.
Duncan subsequently plead no contest to all charges, and was sentenced to three years in prison on the first-degree felony possession charge, with concurrent eight-month prison sentences imposed for each other count in both cases. The property seized during the searches, i.e., his truck, the scale and eight hundred fifty-one dollars in cash, was forfeited to the State. He was granted bond pending disposition of this appeal, in which he asserts one assignment of error:
 The Trial Court Erred in Denying Appellant's Motion to Suppress Evidence Based Upon a Finding That a Protective Search of Appellant's Satchel Was Justified.
In general, the Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution coextensively prohibit unreasonable and warrantless searches and seizures.[1] Under Terry v. Ohio,[2] a limited protective search of a detainee's[3] person for concealed weapons is justified only when the officer has reasonably concluded that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others.[4] "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *."[5] Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others.[6]
In assessing the conclusion that a detainee may be armed and dangerous, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * Furthermore, the standard against which the facts are judged must be an objective one: `[W]ould the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?'[7]
Initially, we note that our standard of review in evaluating a judge's factual findings upon a motion to suppress was set forth by this court in State v. Fellows,[8] as follows:
 In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility.[9] A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence.[10] However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. * * *[11]
Accordingly, since the judge's refusal to find justification in the search at issue based on Duncan's consent was the product of her evaluation of the directly conflicting testimony of Duncan and Special Agent Wallace, we give due deference to that finding. Our review, then, is limited to whether the testimony adduced at hearing supported the judge's finding that the search was justified as a limited search for weapons. For the following reasons, we conclude that it did not.
At hearing, Special Agent Wallace testified that he did not consider Duncan to present a threat to anyone as he exited his truck and approached the home. He further stated that he permitted Sherwood to allow Duncan to enter the home, which was otherwise a calm and stable scene, although he had no idea who he was. He indicated that nothing about Duncan's small leather bag appeared to suggest that it would contain a weapon, only that it could have, based solely on its size. Special Agent Wallace testified that, upon handcuffing Duncan when the marijuana was discovered, he did not conduct a full pat-down of Duncan in order to check his person for weapons, but merely checked the back of his pants to ensure that Duncan did not have access to a weapon with his hands cuffed behind him. According to Special Agent Wallace, it was only after Duncan was handcuffed, pursuant to the discovery of marijuana, that he became aware of the presence of a passenger and firearm in Duncan's truck. Finally, he specifically testified that, had Duncan not given consent to search his leather bag, he would not have done so.
In spite of the above testimony, and in spite of Duncan's obvious, nervously weakened condition upon seeing the FBI agents, and in spite of a complete lack of dialogue in the record between any agent and Duncan to ascertain who he was or why he had come to the home, Special Agent Wallace testified that Agent Oliver searched the leather bag in addressing a legitimate concern the agents had that Duncan may have been armed and dangerous, in pursuit of protecting them and all other occupants of the home, and particularly given the presence of three other persons on the home's first floor. He did not, however, testify that Duncan's nervous behavior prompted any concern for anyone's safety or suspicion that Duncan may have been engaged in a criminal act, although that inference may arguably exist, since he testified that Duncan appeared more nervous than the average civilian encountering law enforcement.
Generally, at a suppression hearing, the State bears the burden of proving that a warrantless search or seizure meets Fourth Amendment standards of reasonableness.[12] Given the testimony of Special Agent Wallace and the fact that, by all accounts, Duncan was searched within seconds of his permitted entry of the home, we cannot conclude that the sight of an obviously shaken Duncan, carrying an otherwise innocuous-looking small leather bag into a calm and stable environment, could have objectively provided the agents with specific and articulable facts to justify a reasonable member of law enforcement to conclude that he may have been armed and dangerous, or presented a threat to their safety. As such, we find that the judge did not have the requisite competent and credible evidence before her to factually justify a conclusion that the search of Duncan's bag was executed pursuant to a constitutionally permissible protective search for weapons.
Judgment reversed and remanded.
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., And ANN DYKE, J., CONCUR.
[1] See State v. Robinette (1997), 80 Ohio St.3d 234, 239,685 N.E.2d 782.
[2] (1968), 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868.
[3] We pause only to note that the parties did not dispute below, and concede here, that the encounter between the agents and Duncan constituted a valid, limited detention.
[4] Id. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908.
[5] Adams v. Williams (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923,32 L.Ed.2d 612, 617.
[6] State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph two of the syllabus.
[7] State v. Andrews (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, citing Terry v. Ohio, supra (Internal cites omitted).
[8] (May 22, 1997), Cuyahoga App. No. 70900.
[9] State v. Clay (1973), 34 Ohio St.2d 250, 298 N.E.2d 137.
[10] See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54.
[11] State v. Fellows, supra, citing State v. Curry (1994),95 Ohio App.3d 93, 96, 641 N.E.2d 1172.
[12] City of Maumee v. Weisner (1999), 87 Ohio St.3d 295,720 N.E.2d 507.