The STATE of Ohio, Appellee,

v.

CURRY, Appellant.

[Cite as *State v. Curry* (1994), 95 Ohio App.3d 93.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65382.

Decided May 19, 1994.

94

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Denise R. Cameron,* Assistant County Prosecuting Attorney, for appellee.

*Huffman, Isaac & Fisher* and *Jeffrey P. Hastings,* for appellant.

---

*Per Curiam.*

Defendant-appellant Benson Curry ("appellant") appeals the trial court's overruling of his motion to suppress the crack cocaine seized after an investigatory stop.

Appellant raises the following assignment of error:

"The trial court erred in allowing the use of evidence which was seized as a result of an improper investigatory stop, without a warrant and without any exception to the warrant requirement, in violation of the Ohio Constitution and the United States Constitution."

Finding the assignment of error to be without merit, we affirm.

## I

At the suppression hearing, Cleveland Police Detective Darren Robinson testified he and his partner were patrolling the location near E. 116th Street and Parkview on January 10, 1993, at approximately 12:20 a.m. They and other officers were there in response to numerous complaints regarding narcotic activity in an area known for its high illegal drug sales. The detectives drove an unmarked vehicle and were wearing plain clothes with their police badges around their necks.

Appellant was observed standing on the corner of East 116th Street and Parkview. He stopped another male and showed that person some objects held in his hand. After observing the officers, appellant placed the objects in a pocket and began to run. Robinson exited the vehicle to detain appellant for purposes of identification. Robinson intended to see if appellant lived in the neighborhood, check for outstanding warrants, and warn appellant that he could be arrested for loitering if caught again in the area for no apparent purpose.

Appellant refused to remove his hands from his pockets and place them on the car or show identification. Appellant became verbally abusive and continued to refuse to remove his hands from his pockets. Robinson was afraid appellant was concealing a knife or small weapon. The two began to struggle physically and fell to the ground. Robinson's partner, Detective Long, came to assist. Both saw appellant remove an object from his pocket and drop it to the ground. Long

retrieved the object, which proved to be a plastic bag containing ten rocks of cocaine.

After the trial court overruled the motion to suppress, appellant entered a no contest plea to one count of drug trafficking and one count of drug abuse, both with a violence specification and two further clauses for prior convictions for drug abuse and trafficking. Appellant was found guilty and sentenced to four to fifteen years for the drug trafficking charge and three to ten years for the drug abuse count. Both sentences run concurrently.

## II

In his sole assignment of error, appellant contends the trial court erred by allowing the use of the cocaine as evidence as it was seized as a result of a warrantless and improper investigatory stop. Appellant argues that Detective Robinson lacked specific and articulable facts sufficient to permit an investigatory stop as the officer did not know that the object appellant displayed to the passerby was illegal contraband, that the area is residential in nature so that observing two men in conversation does not indicate criminal activity, and that running at the sight of police has been held to be insufficient to warrant a stop.

■ In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908.

[2–4] The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. Warrantless searches are per se unreasonable unless an exception applies. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. One such exception was set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, which balanced a person's right to be free from unreasonable searches and seizures against protecting the police and the public from harm. A reasonable search for weapons is allowed absent probable cause if the officer has specific and articulable facts which, along with rational inferences from the facts, justify the search. The standard is whether a reasonably prudent person would be warranted in believing that his or others' safety is jeopardized. The officer need not be absolutely certain the individual is armed but may initiate a search when his

suspicions are reasonably aroused. *State v. Smith* (1978), 56 Ohio St.2d 405, 407, 10 O.O.3d 515, 516, 384 N.E.2d 280, 281.

■ The propriety of the investigative stop is viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. A review of the totality of the circumstances is based upon the objective observations and information of the officer along with the inferences and deductions made by a trained law enforcement officer that the particular individual is engaged in wrongdoing. *United States v. Cortez* (1981), 449 U.S. 411, 417–418, 101 S.Ct. 690, 694–695, 66 L.Ed.2d 621, 628–629. The scope and duration of the investigative stop must be no more than necessary to effectuate the purpose for which the initial stop was made. *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607. That purpose must be such as to protect the officer from the presence of weapons or other dangerous instruments. *Terry, supra,* 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 910.

■ Appellant has pointed to several factors which, individually, would not justify an investigatory stop. An area's reputation for criminal activity is not enough for an officer to approach an individual. *State v. Nealen* (1992), 84 Ohio App.3d 235, 239, 616 N.E.2d 944, 947. Running or walking briskly away also is insufficient. *State v. Arrington* (1990), 64 Ohio App.3d 654, 582 N.E.2d 649. A furtive gesture, standing alone, does not create the requisite reasonable suspicion. *London v. Edley* (1991), 75 Ohio App.3d 30, 598 N.E.2d 851.

However, the investigative stop is viewed according to the totality of circumstances. Appellant was standing on the corner of an intersection of a known drug area in the middle of a winter's night. He stopped another man and showed him something appellant was holding in his hand. He immediately placed that object in his pocket upon spotting the detectives and began to run. After being detained for purposes of identification, appellant repeatedly refused to identify himself or remove his hands from his pocket. He became verbally and physically belligerent. The drugs were not discovered during a search but when purposefully dropped by appellant.

The detectives had reasonable and legitimate fears for their safety based on appellant's hostility and combativeness, the lateness of the hour, and the fact that they were away from the protection of their vehicle. Appellant's persistence in keeping his hands in his pockets where weapons could be located further added to the officers' anxiety and safety concerns. See *State v. Fanning* (1990), 70 Ohio App.3d 648, 591 N.E.2d 869. The whole picture of this incident yields sufficient evidence to support the officers' belief appellant was armed and dangerous.

The area of the incident is noted for its abundant narcotic activity. The detectives were there in response to numerous drug-related complaints and had made an arrest there within twenty-four hours of their encounter with appellant. Based on all the factors present that night, the investigative stop was justified.

Appellant's assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

SPELLACY, P.J., and MATIA, J., concur.

HARPER, J., dissents.

HARPER, Judge, dissenting.

I respectfully dissent from the majority opinion, which is a continuous misapplication by this court of the Fourth Amendment protection against unreasonable search and seizure. The Constitution is a set of guarantees of freedom and a symbol of vigilance against the abusive use of the government's power over its citizens.

The majority recognizes that the so-called reasons for the seizure in the instant case were insufficient as a matter of law but concluded that all of the reasons when added together justified a stop. The majority states:

"The area of the incident is noted for its abundant narcotic activity. The detectives were there in response to numerous drug-related complaints and had made an arrest there within twenty-four hours of their encounter with appellant."

The majority also alludes to 12:20 a.m. on a weekend as being too late to be standing around. "Appellant was standing on the corner of an intersection of a known drug area in the middle of a winter's night." It must also be noted that the Cleveland Police Department, without any benefit of a study, drew their own biased boundaries around the areas of our city which they consider to be high-crime drug areas to the exclusion of others. The areas designated are all the areas where poor blacks, whites, and Hispanics of our county live. See my dissent in *Smith, infra.* Thus, these biased boundaries give law enforcement officers, with the blessing of this court, the authority to suspend the constitutional rights of the residents. The only place they can congregate that is not a high-crime area therefore is the City Hall.

My understanding of the law is that it does not matter how many arrests and complaints were made—a seizure must be based on the criminal activity observed of the individual seized. This court also must understand the diversity of the citizens of this county and stay clear of judging all citizens from the cultural experience of only one group. It is a common practice, which should not be made

illegal, for people from that part of our county to be outside after midnight. They should not be rendered criminals, subject to seizure, when they are out after midnight merely because in other parts of the county people remain indoors after 10:00 p.m. The majority ignores an earlier decision by this court which held that:

"Police officers who had received complaints about drug sales near school did not have reasonable suspicion of criminal activity necessary to warrant investigatory stop of defendant after they observed defendant standing with several other males in school yard appearing to make some sort of exchange and observed defendant run away when he saw police officers exit their vehicle. U.S.C.A. Const.Amend. 4." *State v. Eppinger* (1991), 74 Ohio App.3d 503, 599 N.E.2d 709, headnote 2.

The law has remained unchanged that absent a warrant a search based on an investigatory stop must be based on the officer possessing a reasonable belief that a crime is being or about to be committed. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The mere fact that one is associating with or conversing with known drug users is not enough to warrant an inference of possession or sale of drugs. *Sibron v. New York* (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917. A person's presence in the so-called high crime area does not suspend his constitutional right to be free from unreasonable intrusion into his personal security. *State v. Chandler* (1989), 54 Ohio App.3d 92, 560 N.E.2d 832. See, also, *State v. Fahy* (1988), 49 Ohio App.3d 160, 551 N.E.2d 1311.

In the instant case the officer's reason for seizing Mr. Curry was that he was in the so-called high crime area around 12:20 on Saturday morning. He was showing something to another male. He saw the officers and ran.

"Q. And then what did you do?

"A. At that time I exited my vehicle and detained the male. The male had his hands in his pocket. And I just wanted to detain him to identify him."

Citing *State v. Crosby* (1991), 72 Ohio App.3d 148, 594 N.E.2d 110, this court held in *State v. Fincher* (1991), 76 Ohio App.3d 721, 726, 603 N.E.2d 329, 332, that:

" 'In *State v. Arrington* (1990), [64 Ohio App.3d 654, 582 N.E.2d 649], we stated, "It is not illegal for four males to assemble by a car and engage the occupant in conversation. * * * It is not unreasonable for a young, black male living in a neighborhood with drug sales and liable to be stopped to run when approached by a police car whose officers assume a drug sale whenever someone speaks to someone in a car and believe the mere act of congregating justified a seizure." * * * This court went on to state, "This is not to deny the reality the officers face in combating the drug sellers. But although drugs are often sold to

occupants of cars by people who gather near them it is just as likely that those merely by a car are engaged in an innocent activity as it is that they are engaged in an illegal one." * * * ' "

It is lamentable that courts, in a very rapid process, are taking away the constitutionally protected rights of every citizen to be free from unreasonable search and seizure in a failed attempt to fight the war on drugs. The irony and tragedy of it all are that at the end we shall become two-way losers of this lost cause. We shall become losers of a war that had an improper focus, and, above all, losers also of a fundamental right that was added to our Constitution to make it an acceptable document to all. What is more important, to maintain the integrity of our Constitution and judicial system, or to go outside the system on a witch hunt?

The reason for this avoidable tragedy is because courts like the majority have abdicated their neutrality and have joined in the latest frenzy and the sentiments of the times. We forget that times change, but the damages done when we fail to take proper measures stay with us forever, and oftentimes become more difficult if not impossible to correct. The examples abound: prohibition, which created organized crime that we cannot get rid of today in spite of all our might; also, racism, bigotry and intolerance that prevail in our society today. Somehow, somewhere when these problems arose, the courts consciously failed to properly interpret the Constitution but chose instead to join in the convenience of the day and make *popular decisions*. Benjamin Franklin summed it up with his usual pungency: "Those who would give up essential liberty to purchase a little temporary safety, deserve neither liberty nor safety."

I'd like to finish this dissent by pointing out what is wrong with decisions like the present case. The majority and other courts of similar schools of thought analyze the Fourth Amendment protection from the viewpoint that it is the state against the criminal. I must confess with such a narrow viewpoint I am tempted many times to join in arriving at the so-called *popular and expected decision*. But each time I go back to the Constitution to see how and why that amendment was put in the Constitution, I am more convinced that such a narrow viewpoint is a failure in understanding why we have the amendment.

The Bill of Rights, in particular, the Fourth Amendment prohibition against unreasonable search and seizure, from the framers' point of view, was to protect all citizens, including the few individuals that may be considered the scum of the earth. It is very easy for the state to reach everybody by going through a few, for the violation of the rights of a few usually leads to the violation of the rights of all, guilty or not. It is the importance of this recognition that led the states of New York and Virginia to refuse to approve the United States Constitution until the federal government guaranteed freedom and justice for *all the people*. Thus

this protection was added to guide against such indiscriminate actions of the state which are prevalent today in the poor neighborhoods of our state in the so-called war on drugs. These rights should not be discarded because a few criminals may benefit from them.

We cannot kid ourselves and hide behind an "end justifies the means" jurisprudence, pretending that since only criminals are subjected to these constitutional violations, it is okay. In a Plain Dealer interview by Karen Farkas following this court's decision in *State v. Smith* (Aug. 29, 1991), Cuyahoga App. No. 58918, unreported, 1991 WL 185720, she wrote:

"Cleveland police Lt. Martin Flask acknowledged that police daily stop and release people in high-crime and drug areas because of what they believe is suspicious activity. Many stops result in arrests.

" *'We think our citizens would want those officers to investigate and make a determination if an illegal activity occurred,'* Flask said. 'To do otherwise would encourage police to turn a blind eye. We look at the totality of the situation, including whether or not it is a high-crime area.'

"Flask said some people become angry if they are stopped and released. 'But others say, "Thank you for being so alert," ' he said." (Emphasis added.)

I cannot understand how such acts of the state in law enforcement can pass constitutional muster and gain the endorsement of this court. Any law enforcement that is not uniformly applied but is strictly based on race, class or geographical location of the citizens is inherently evil and dangerous and should have no place in our constitutional democracy. Therefore, it is my opinion that law enforcement with false pretenses must be condemned and stopped.

Accordingly, I dissent.