OPINION
Defendant-appellant, Craig Brock, appeals his sentence and conviction by the Cuyahoga County Common Pleas Court, entered upon a plea of no contest to the indictment charging appellant with one count of drug possession in violation of R.C. 2925.11.
Appellant asserts that the trial court erred in denying his motion to suppress and in granting his motion for return of funds, but ordering that the funds be deposited with the clerk of courts and applied to outstanding court costs. We agree.
The record reflects that on April 22, 1998, the Cuyahoga County Grand Jury indicted appellant on one count of drug possession in violation of R.C. 2925.11. On June 16, 1998, appellant filed a motion to suppress evidence allegedly gained as the result of an illegal search and seizure. The trial court held a hearing on the motion to suppress on July 20, 1998.
At the hearing, the state presented the testimony of City of Cleveland Police Officer George Vukovic. Officer Vukovic testified that on January 30, 1998, at approximately 12:30 p.m., he and his partner were assigned to give special attention to East 105th and the surrounding streets due to reports of heavy drug activity in the area. As they were pulling onto Kempton Road, Vukovic and his partner observed appellant standing next to Eugene Sowell, whom the officers knew to be a juvenile. Because it was approximately 12:30 p.m. on a school day, the officers suspected that Sowell was truant and in violation of curfew. If appellant — an adult — was accompanying Sowell, however, Sowell was not in violation of curfew.
In order to determine whether appellant was accompanying Sowell, the officers pulled their cruiser up to where appellant and Sowell were standing. Officer Vukovic testified that as the cruiser approached, appellant began walking "hastily" up a driveway. Vukovic exited his vehicle and began walking after appellant, telling him several times to stop and "I just want to talk to you." According to Vukovic, appellant kept saying "I have to get my dog," and continued walking. On direct examination, Vukovic testified that he did not see or hear any dog. On cross-examination, Vukovic admitted that he later learned that appellant lived in the house next door to where he was arrested and owned a dog.
According to Vukovic, he did not know whether appellant had a weapon because appellant had his hand in his pocket and, as he was walking away with his back to Vukovic, "kept fumbling in his jacket." Vukovic drew his gun and ordered appellant to stop and take his hand out of his pocket. Appellant ignored Vukovic's order and began running away. Vukovic chased after appellant, again telling him to stop and take his hand out of his pocket. According to Vukovic, even as he was chasing appellant, he did not suspect him of any criminal activity and did not intend to arrest him. Rather, he "was going to speak to him, but at that time, I didn't know whether he had a weapon." Vukovic testified that he "just wanted him to take his hand out of his pocket."
As Vukovic chased appellant up the driveway, around the back of the house, and down the other side of the house, he observed appellant pull his hand out of his pocket and drop a cigarette package on the ground. While his partner continued to chase appellant, Vukovic inspected the cigarette package and saw that it contained a small packet of heroin. Vukovic then radioed his partner and informed him that he had recovered drugs from the cigarette package.
Vukovic's partner apprehended appellant and the officers arrested him. At the police station, while he was being booked, three more packets of heroin fell out of the waistband of appellant' s pants.
The trial court denied the motion to suppress, finding that although appellant was free to refuse a consensual encounter with the police he did not do so. but only acted evasively by walking away from them. The trial court concluded that appellant became a "menace," however, by putting his hands in his pocket and not obeying Vukovic's order to take his hands out of his pockets. The trial court also concluded that appellant was not seized at any time prior to when he discarded the drugs.
Appellant subsequently pled no contest to the indictment. The trial court found him guilty and on August 5, 1998, sentenced him to two years of community control sanctions with conditions. The trial court also suspended appellant's driver's license for six months and ordered him to pay a $500 fine, a probation fee and court costs.
On August 5, 1998, prior to the sentencing hearing, appellant filed a motion to return $102 allegedly seized from him when he was arrested. At the sentencing hearing, the trial court granted appellant's motion to return the money, but ordered that the money be sent to the clerk's office and applied to outstanding costs.
The sentencing order was journalized on August 12, 1998. On September 1, 1998, the state filed a brief in opposition to appellant's motion for return of funds.
On September 3, 1998, appellant filed a timely notice of appeal, raising two assignments of error for our review:
 I. APPELLANT'S RIGHTS UNDER SECTION 14, ARTICLE I OF THE OHIO CONSTITUTION AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE TRIAL COURT DENIED A MOTION TO SUPPRESS DRUGS APPELLANT DROPPED AFTER HE WAS ORDERED, AT GUNPOINT, TO STOP, AND THUS WAS SEIZED WITHOUT A REASONABLE SUSPICION THAT HE WAS ENGAGED IN CRIMINAL ACTIVITY.
 II. THE TRIAL COURT'S ORDER THAT THE MONEY SEIZED FROM APPELLANT WHEN HE WAS ARRESTED BE GIVEN TO THE CLERK'S OFFICE FOR COSTS WAS VOID AS WITHOUT JURISDICTION AND IN VIOLATION OF THE DUE PROCESS REQUIREMENTS OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION AND ART. I, SEC. 16 OF THE OHIO CONSTITUTION BECAUSE THE STATE FAILED TO COMPLY WITH THE MANDATORY REQUIREMENTS OF THE FORFEITURE STATUTES.
In his first assignment of error, appellant contends that the trial court erred in denying his motion to suppress. Specifically, appellant contends that Officer Vukovic had no basis for an investigatory stop of appellant and no probable cause to arrest him.
The standards for review of a trial court's ruling on a motion to suppress have been set forth in a number of cases. Because the trial court is in the best position to assess credibility and resolve issues of fact, we must accept the trial court's findings of fact "if they are supported by competent, credible evidence."State v. Retherford (1994), 93 Ohio App.3d 586, 592. Then, accepting these facts as true, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
The Fourth Amendment to the United States Constitution protects an individual against unreasonable searches and seizures. "[T]he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but `to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" United States v.Mendenhall (1980), 446 U.S. 544, 553-554, quoting United Statesv. Martinez-Fuerte (1976), 428 U.S. 543. 554.[1]
It is well-established that not every encounter between a citizen and a law enforcement official involves theFourth Amendment guarantee against unreasonable searches and seizures.California v. Hodari D. (1991). 499 U.S. 621. Accordingly, the United States Supreme Court has created three categories of policecitizen encounters to identify where these constitutional guarantees are implicated: 1) a consensual encounter; 2) an investigatory stop; and 3) an arrest. Florida v. Royer (1983),460 U.S. 491, 501-507.
Encounters between the police and a citizen are consensual where the police merely approach an individual in a public place, engage the person in conversation and request information.Medenhall, supra at 553. There need be no objective justification for such an encounter. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy and the protections of the Fourth Amendment are not implicated.Id. at 554.
The second type of encounter, an investigatory stop, involves a seizure of the individual for a limited duration and a limited purpose. Retherford, supra at 595. A police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he or she reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." State v. Andrews
(1991), 57 Ohio St.3d 86, 87, quoting Terry v. Ohio (1968),392 U.S. 1, 21.
The standard against which the facts are judged is an objective one: "Would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Id. An objective and particularized suspicion that criminal activity was afoot must be based on the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, 180.
A person has been "seized" for purposes of the Fourth Amendment when a law enforcement officer, by means of physical force or show of authority, has in some way restrained his or her liberty such that a reasonable person would not feel free to walk away. United States v. Mendenhall (1980), 446 U.S. 544, 553-554; Terryv. Ohio (1968), 392 U.S. 1, 16. "[T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" are examples of circumstances that might indicate that a seizure has occurred.Mendenhall, supra at 554.
The third type of police-citizen encounter involves a seizure in the nature of an arrest, which may occur only if the police have probable cause to arrest a person for a crime. State v.Retherford (1994), 93 Ohio App.3d 586, 595, citing Florida v.Royer (1983), 460 U.S. 491.
In denying appellant's motion to suppress, the trial court found that although he was free to do so, appellant did not refuse a consensual encounter with the police. Further, the trial court held that Officer Vukovic did not seize appellant at any time prior to when he discarded the drugs.
Appellant, however, contends that Officer Vukovic seized him, for Fourth Amendment purposes, when he drew his gun and ordered appellant to stop and take his hand out of his pocket. Appellant contends that there was no basis for this investigatory stop, however, because Officer Vukovic did not have a reasonable suspicion that appellant was engaged in criminal activity.
We agree that Officer Vukovic seized appellant when he drew his gun and ordered him to stop and to take his hands out of his pockets. It is apparent that a police officer who has drawn his gun, pointed it at a person and ordered him or her to stop has demonstrably curtailed that individual's liberty and freedom of movement such that a reasonable person would not feel free to leave. See Mendenhall, supra at 554; Terry, supra at 19.
Appellee argues, however, in reliance on State v. Curry (1994),95 Ohio App.3d 93, that this was a valid investigatory stop. Appellee contends that Officer Vukovic had a reasonable suspicion that appellant was about to draw a weapon and, therefore, he properly drew his gun and ordered appellant to stop so that he could perform a protective search for weapons.
In Curry, police officers observed the defendant standing on an intersection in a known drug area at approximately 12:20 a.m. The defendant stopped another male and showed that person some objects that he was holding in his hand. After he saw the police officers, however, the defendant placed the objects in his pocket and began to run. One of the officers exited his vehicle and detained the defendant. The officer intended to check the defendant's identification to determine whether he lived in the area and to warn him that he could be arrested for loitering if caught again in the area for no apparent purpose. Id. at 95.
The defendant refused to remove his hands from his pockets and place them on the car or to show his identification. He then became verbally abusive. The officer and the defendant began to struggle physically and then fell to the ground. The officer's partner came over to assist and both officers saw the defendant remove a plastic bag, containing ten rocks of cocaine, from his pocket and drop it to the ground. Id. at 95-96.
On appeal, this court affirmed the ruling of the trial court denying the defendant's motion to suppress. This court found that the investigatory stop was justified by the totality of the circumstances. The court noted that:
 the detectives had reasonable and legitimate fears for their safety based on appellant's hostility and combativeness, the lateness of the hour, and the fact that they were away from the protection of their vehicle. Appellant's persistence in keeping his hands in his pockets where weapons could be located further added to the officers' anxiety and safety concerns. The whole picture of this incident yields sufficient evidence to support the officers' belief [that] appellant was armed and dangerous. Id. at 97.
Here, however, unlike Curry, the investigative stop was not justified by the totality of the surrounding circumstances. First, there were no "specific and articulable facts" which led Officer Vukovic to believe that appellant was involved in criminal activity. Officer Vukovic and his partner merely observed appellant standing on a street next to a known juvenile in the middle of the day. They did not see any suspicious or unusual activity as they drove up. Indeed, Officer Vukovic testified that the officers did not suspect appellant of any criminal activity. Rather, they suspected only that the juvenile with appellant was truant and in violation of curfew.
Absent the observations of any other suspicious activity, the mere fact that appellant walked briskly away as the police approached, does not justify the investigative stop. See State v.Fanning (1990), 70 Ohio App.3d 648, 650. Nor does the fact that appellant continued to walk away after Officer Vukovic told him that he wanted to talk to him justify the investigative stop. Although a law enforcement officer has the right to approach a citizen on the street and ask him or her questions, any person who is not suspected of criminal activity has the right to disregard the officer's questions and walk away, without consequence.
Similarly, the fact that appellant was fumbling in his pockets as he was walking away from Officer Vukovic does not justify the investigatory stop. We addressed this issue in State v. Fanning
(1990), 70 Ohio App.3d 648. In Fanning, two police officers in their cruiser observed the defendant and another man standing outside a bar in a high-crime area. For an indeterminate period of time, the officers observed the two men, who stood facing each other with their hands in their coat pockets. The, defendant stood with his back toward the police car. The officers did not observe any suspicious activity nor any movement of hands between the two men.
As the two officers in their cruiser approached the men, the defendant's companion, who stood facing the police, said something to the defendant. Apparently in response to this remark, the defendant turned and looked toward the police as they approached in their vehicle. He then began to walk briskly away from the scene.
The police officers exited their vehicle with their weapons drawn and ordered the two men to stop and take their hands from their pockets. The defendant hesitated momentarily but withdrew his hands from his pockets after one officer ordered him a second time to do so. That officer, suspecting that the defendant was armed, conducted a pat-down search of the defendant's person and discovered two cocaine pipes that contained suspected cocaine residue. After arresting the defendant, the police took him to the local police station, where they found a packet of crack cocaine in the defendant's wallet.
On appeal, we held that the trial court erred in overruling the defendant's motion to suppress. We stated:
 In order for an investigative stop to be considered valid, the state must establish the existence of specific and articulable facts which would reasonably lead a police offer to believe that the defendant was involved in criminal activity.
 Here, the arresting police officers had no such reasonable basis. At the moment that the police decided to approach and stop him, the defendant had exhibited nothing but innocuous behavior. The mere fact that the defendant walked briskly away as the police approached, absent the observation of any other suspicious behavior, would not justify an investigative stop. The fact that the defendant refused to immediately remove his hands from his coat pockets, while perhaps justifying a protective search following an otherwise lawful stop, does not constitute a circumstance justifying the initial intrusion by the police. Id. at 650.
In this case, as in Fanning, the fact that appellant refused to immediately remove his hand from his pocket does not constitute a circumstance justifying the investigatory stop. Appellant was walking away from Officer Vukovic and had his back toward him. Moreover, he made no threatening comments or gestures. Thus, there were no specific and articulable facts that would give rise to a reasonable suspicion that appellant was armed and dangerous.
Accordingly, under the totality of these circumstances, where there was no suspicion that appellant was engaged in criminal behavior, and no immediate threat or identifiable threatening activity, we find nothing that would justify the investigatory stop.
Evidence derived from an illegal investigative stop is inadmissible. State v. Carter (1985), 28 Ohio App.3d 61, 62. Accordingly, the trial court erred in denying appellant's motion to suppress. Moreover, absent the fruits of the unconstitutional search and seizure, there was insufficient evidence to convict appellant of any crime.
Appellant's first assignment of error is therefore well-taken. Appellant's conviction is vacated and he is hereby discharged.
In his second assignment of error, appellant contends that the trial court erred in granting his motion to return the $102 seized from him when he was arrested, but then ordering that the money be sent to the office of the Clerk of Courts and applied to outstanding court costs. Specifically, appellant contends that the trial court was without jurisdiction to take the money and apply it to costs because there was no proper forfeiture proceeding.
Appellee, on the other hand, contends that there is no evidence that the money actually exists. Appellee asserts that the booking card indicates that the property on appellant's person when he was booked consisted of "$0.00, wallet, 2 lighters, keys perfume, ID." Appellee argues that trial court never made a factual determination that $102 was seized from appellant the day he was arrested and, therefore, appellant's claim to the money is unsubstantiated. We disagree. By granting appellants's motion for return of funds, the trial court specifically found that the money was seized from appellant on the day he was booked.
We need not address appellant's arguments regarding the trial court's jurisdiction to order the money applied to court costs, however. "Costs of prosecution * * * can be assessed against a defendant only if the state is successful." State v. Powers
(1996), 117 Ohio App.3d 124, 128. See also, Cuyahoga Falls v.Coup-Peterson (1997). 124 Ohio App.3d 716, 717 ("[J]udgment shall be rendered for costs of prosecution "against a convicted defendant.' An acquitted or an innocent defendant is not required to pay * * * fees.") (emphasis in original).
In light of our disposition of appellant's first assignment of error, appellant is not required to pay any fees. Appellant's second assignment of error is therefore sustained. The trial court's order that the $102 be sent to the clerk of courts and applied to costs is hereby reversed. The money is to be returned forthwith to appellant in accordance with our opinion.
Conviction vacated and defendant discharged.
It is, therefore, ordered that appellant recover from appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J. and ANNE T. KILBANE, J.,CONCUR.
 __________________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE
[1] Ohio courts have interpreted Section 14, Article I of the Ohio Constitution to protect the same interest in a manner consistent with the Fourth Amendment to the United States Constitution. See State v. Andrews (1991), 57 Ohio St.3d 86, footnote 1, and cases cited therein.