OPINION
{¶ 1} Appellant, Harold A. Jones, appeals from the Ashtabula County Court of Common Pleas' denial of his motion to suppress evidence. Appellant was convicted of one count of possession of crack cocaine.
 {¶ 2} On July 25, 2000, appellant was arrested for driving under the influence and possession of drug paraphernalia. He was issued a ticket for "Trafficking in drugs — Moving Violation," in violation of R.C. 2925.11(A). Subsequently, appellant was indicted for possession of crack cocaine, in violation of R.C. 2925.11(A) and (C)(4)(a), a felony of the fifth degree.
 {¶ 3} On January 19, 2001, appellant filed a motion to suppress all the evidence obtained as the result of his arrest. In his motion, appellant argued that the police did not have an articulable and reasonable suspicion that he was committing criminal activity justifying the traffic stop, and that there was no probable cause to arrest.
 {¶ 4} A hearing was held on appellant's motion to suppress. Trooper Frank Clayman ("Trooper Clayman") of the Ohio State Patrol attested that, at approximately 2:55 a.m., on July 25, 2000, he initiated a traffic stop of a gold-colored Honda driven by appellant after he observed the vehicle turn without using a turn signal. Because appellant did not immediately pull over, Trooper Clayman radioed for assistance. Tooper Daniel Keller ("Trooper Keller") responded to the call.
 {¶ 5} Once the vehicle pulled over, Trooper Clayman approached the driver, told him the reason for the stop, and asked for identification. Trooper Clayman stated that appellant "appeared pretty nervous" and "his words were being slurred."
 {¶ 6} Trooper Clayman then proceeded to walk over to the female passenger, who had exited the car and begun walking away. From that point on, Trooper Keller spoke with appellant.
 {¶ 7} Trooper Keller attested that he assisted Trooper Clayman with a traffic stop, on July 25, 2000, at approximately 2:55 a.m. Trooper Keller confirmed that he spoke with appellant after Officer Clayman went to speak with the female passenger. At that time, appellant was standing between his car and Trooper Clayman's cruiser. As he spoke with appellant, Trooper Keller noticed that appellant "had some indications that he could possibly be under the influence of some form of narcotic." The trooper explained that "[t]he indications were that his pupils appeared to be fixed even with the strobes flashing, and he seemed to have a twitch. Didn't [sic] seem like a nervous twitch. It seemed like possibly a need for a controlled substance twitch." Trooper Keller testified that he had additional training in "drug interdictions." He explained that "when an individual licks their lips a lot and basically runs their tongue over their lips, it's an indicator that there's a possibility that they were smoking a crack pipe because the crack pipe heats up and they get those fever blisters on their tongue."
 {¶ 8} Trooper Keller testified that before he administered the horizontal gaze nystagmus ("HGN") test, he shined his flashlight in the open driver's side door and observed a crack pipe in the door. Based on his experience in dealing with people that are under the influence of narcotics and his observation of the crack pipe, Trooper Keller concluded that appellant was under the influence of some type of narcotic.
 {¶ 9} After seizing the crack pipe, Trooper Keller asked appellant to perform the HGN test to determine if appellant was under the influence of alcohol or drugs. After conducting the test, the trooper concluded that appellant was under the influence of an illegal narcotic, not alcohol. Appellant was placed under arrest. While conducting a search incident to arrest, Trooper Keller found small white rocks, which were later identified as crack cocaine, in appellant's right pocket.
 {¶ 10} After the hearing on appellant's motion to suppress, the court denied the motion. Subsequently, the case was tried to a jury and appellant was convicted of one count of possession of crack cocaine. The trial court sentenced appellant to two years of community control and suspended his driver's license for six months.
 {¶ 11} From this judgment and sentence, appellant raises the following assignment of error:
 {¶ 12} "The trial court erred in overruling the defendant-appellant's motion to suppress evidence obtained as a result of his arrest for driving under the influence."
 {¶ 13} In appellant's sole assignment of error, he argues that the police lacked probable cause to arrest him for driving under the influence of narcotics. Specifically, appellant asserts that the record is devoid of any evidence that his driving was actually impaired. In support of his argument, appellant cites to State v. Maxwell (Aug. 31, 2001), 11th Dist. No. 99-L-042, 2001 WL 1078257, at *3-4, wherein this court approved the following jury instruction regarding the definition of under the influence:
 {¶ 14} "Under the influence means that a defendant had within his body a drug of abuse, whether mild or potent, in such a quantity, whether small or great, that it adversely affected and appreciably impaired the Defendant's actions, reactions or mental processes under the circumstances then existing and deprived him of that clearness of intellect and control of himself that he would otherwise have possessed. The question is not how much a drug of abuse would affect an ordinary person. The question is what effect did any drug of abuse consumed by the Defendant have on him at the time and place involved. If the ingestion of a drug of abuse so affected the nervous system, brain, or muscles of the Defendant so as to impair, to an appreciable degree, his ability to operate the vehicle, then the Defendant was under the influence. Appreciable means noticeable or perceptible."
 {¶ 15} Because the foregoing jury instruction sets forth the standard to convict an offender for driving under the influence, rather than the standard for stopping and/or arresting an offender, we conclude that the jury instruction is not determinative of this appeal. Instead, the proper inquiry is whether the evidence presented at the suppression hearing reveals that the police had an articulable and reasonable suspicion or probable cause, justifying the stop and whether the arresting officer had probable cause to believe that appellant was driving under the influence.
 {¶ 16} At a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and, therefore, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. When reviewing a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting these findings of facts as true, a reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. State v.Curry (1994), 95 Ohio App.3d 93, 96.
 {¶ 17} "When a police officer stops an automobile on the basis of a routine traffic violation, there only needs to be a reasonable suspicion that the violation has occurred in order that the stop be permissible under the Fourth Amendment." State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, at *6. A minor violation of a traffic regulation, such as changing lanes without giving a proper signal, that is witnessed by a police officer, standing alone, is sufficient justification to warrant a limited stop for the issuance of a citation. Id.
 {¶ 18} In the instant case, appellant violated R.C. 4511.39 when he made a left turn without first giving the proper signal. As noted above, this traffic violation justified Trooper Clayman's stop for the limited purpose of issuing a citation.
 {¶ 19} Once an officer has stopped a vehicle for a minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may proceed to investigate the detainee for driving under the influence if there exists reasonable suspicion that the detainee may be driving under the influence based on specific and articulable facts. See e.g., Yamma, at * 6-8. When determining whether an officer had probable cause to make an arrest, a reviewing court must consider whether, at the moment the arrest was made, the police had reasonably trustworthy information, sufficient to warrant a prudent man in believing that the suspect was driving under the influence. See Beckv. Ohio (1964), 379 U.S. 89, 91. This determination is based upon the totality of facts and circumstances surrounding the arrest. Id.
 {¶ 20} After properly stopping appellant for a minor traffic violation, Trooper Clayman noticed appellant "appeared pretty nervous" and that his words were slurred. In addition, Trooper Keller concluded that appellant was under the influence of narcotics based on his experience, his observation of narcotic use indicators, his observation of the crack pipe, and appellant's HGN test results. Based on the totality of the circumstances, we conclude that Trooper Keller had reasonably trustworthy information, sufficient to warrant a prudent man in believing that appellant was under the influence.
 {¶ 21} In summation, Patrolman Clayman had probable cause that appellant had committed a criminal act when he observed appellant turn left without using a proper signal. After properly stopping appellant, Trooper Keller observed indications of narcotic use, a crack pipe, and noted that appellant's HGN test results indicated narcotics use. Accordingly, Trooper Keller had probable cause to arrest appellant for driving under the influence and possession of drug paraphernalia. Although a finding of actual impairment may be a requirement for a conviction of driving under the influence, it is not dispositive of the issue of whether an arresting officer has probable cause to arrest an individual for driving under the influence.
 {¶ 22} In light of the foregoing, appellant's sole assignment of error is without merit. The judgment of the trial court is affirmed.
WILLIAM M. O'NEILL, P.J., DONALD R. FORD, J., concur.