The STATE of Ohio, Appellant,

v.

FARROW, Appellee.

[Cite as *State v. Farrow,* 190 Ohio App.3d 793, 2010-Ohio-5843.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94435.

Decided Dec. 2, 2010.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Blaise D. Thomas, Thorin Freeman, and Katherine Mullin, Assistant Prosecuting Attorneys, for appellant.

Joseph Vincent Pagano, for appellee.

LARRY A. JONES, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the trial court's order that granted the motion of defendant-appellee, Ean Farrow, to suppress both the in- and out-of-court identifications made by Harvis Grant. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court's order.

## STATEMENT OF THE CASE

{¶ 2} Harvis Grant and Christopher Davis reported being robbed at a Regional Transit Authority ("RTA") shelter located at East 79th Street and Superior Avenue in Cleveland, Ohio. The robberies allegedly occurred on January 6, 2008, at 4:15 a.m. When questioned by Greater Cleveland Regional Transit Authority Police ("GCRTA"), Grant was unable to give a description of the robber.

{¶ 3} Nearly ten weeks later, Detective Timothy Lloyd of the GCRTA contacted both victims, telling them that the person who robbed them had been apprehended and that the same individual had shot someone a few blocks away during another robbery. Lloyd presented a photo array to both victims, and they both identified Farrow as the man who robbed them.

{¶ 4} Farrow was charged with two counts of aggravated robbery and two counts of robbery in relation to the alleged Grant and Davis robberies. Farrow filed a motion to suppress the in– and out-of-court identifications. On April 17, 2009, and November 23 and 24, 2009, the trial court held hearings relevant to the identification issue. The state conceded that Davis's identification of Farrow as the perpetrator was flawed and inadmissible at trial.

{¶ 5} The trial court issued a memorandum of opinion and order on December 15, 2009, setting forth its factual findings in support of the decision to grant Farrow's motion to suppress the identifications made by both Davis and Grant. The state now appeals that decision.

## STATEMENT OF THE FACTS

{¶ 6} Grant was at the bus stop at East 79th Street and Superior in Cleveland, Ohio. Grant describes this area as dangerous because homicides have occurred there. On January 6, 2008, at approximately 4:15 a.m., Grant arrived at the bus stop. He stated that he saw a man walking across the street, and his approach made Grant want to turn and run. The man told Grant that he "better not run" and "this is a robbery." Grant complied with the robber's demands and gave the robber his money. Grant had never seen this individual before. After robbing Grant, the robber approached Davis and robbed him. The robber demanded that Grant look down while this second robbery occurred. Grant was unable to give a description of the robber, and the only thing he could recall was that the robber was wearing a hoodie with the hood pulled up over his head.

{¶ 7} Grant said that he was able to steal only a few momentary glances at the robber, each consisting of mere seconds. On cross-examination, Grant conceded that he did not recall the color of the assailant's hoodie. or pants. Grant further conceded that he never actually saw a gun and could not state whether the robber had any facial hair, i.e., moustache or sideburns. Grant eventually picked Farrow's picture from the array nearly three months after the incident.

## ASSIGNMENTS OF ERROR

{¶ 8} The state assigns two assignments of error on appeal:

{¶ 9} "[1.] A trial court errs in finding a pretrial identification unduly suggestive based on a lone statement that a suspect has been arrested.

{¶ 10} "[2.] A trial court errs in suppressing evidence of a pretrial identification that is not a product of police misconduct."

## LEGAL ANALYSIS

{¶ 11} The state argues in its first assignment of error that the trial court erred in granting Farrow's motion to suppress Grant's pretrial identification of Farrow.

{¶ 12} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. * * * A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. * * * However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172.

{¶ 13} In *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, the United States Supreme Court held that an identification derived from unnecessarily suggestive procedures, which have a likelihood of leading to a misidentification, violates a defendant's right to due process.

{¶ 14} Courts employ a two-step process to determine the admissibility of identification testimony. The first step focuses only upon whether the identification procedure was impermissibly suggestive. The second part of the inquiry then focuses upon five factors necessary to assess the reliability of the identification, despite the taint of the show-up. These five factors are (1) the witness's opportunity to view the defendant at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's description of the defendant prior to the identification, (4) the witness's level of certainty when identifying the defendant at the confrontation, and (5) the length of time that has elapsed between the crime and the confrontation. *Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; see also *State v. Williams*, 172 Ohio App.3d 646, 2007-Ohio-3266, 876 N.E.2d 991.

{¶ 15} "This court has previously held that telling a victim that the suspect's photo is in the array may render the identification procedure unduly suggestive. See *State v. Jones*, Cuyahoga App. No. 85025, 2005-Ohio-2620[, 2005 WL 1245625]. As we recognized in *Jones*, such a statement pressures a victim to choose someone, regardless of certainty, because the victim was told that the suspect was in the array. Id. at ¶ 17." *State v. Johnstone*, Cuyahoga App. No. 92855, 2010-Ohio-1854, 2010 WL 1712237, ¶ 25.

{¶ 16} Review of the record in the case at bar demonstrates that the identification procedure was impermissibly suggestive. Detective Lloyd's testimony from the April 17, 2009 hearing demonstrates that he told the victim that the suspect's photo was in the array.

Q. All right. And do you recall what you said to Mr. Grant prior to handing him the photo array?

A. Something along—I can't remember every word exactly, but, I believe that male who robbed you is—has been apprehended. I believe that's what I told him.

\* \* \*

Q. All right. Do you recall giving an answer to a question asked by Mr. Thomas where he stated, ["]In the process of presenting, prior to presentment to Mr. Grant what did you say to him about what he was about to look at?["]

And your answer being, Again, pretty much the same thing. I believe we have the suspect who robbed you and Davis at the RTA shelter there, take your time, no rush, kind of close your eyes and remember back to that morning.

{¶ 17} The first part of the inquiry being addressed, we move on to analyze the second part of the inquiry, focusing on the five factors necessary to assess the reliability of the identification.

{¶ 18} The first two factors involve the witness's opportunity to view the defendant at the time of the crime and the witness's degree of attention at the time of the crime. As previously stated, Grant glanced at the robber only for a few seconds, the robber was wearing a hoodie covering his head, and the witness could not even state whether the robber had facial hair.

{¶ 19} Specifically, Grant recalled that the man was wearing a hood but could not recall the color of it. Grant said that he took only a "very—very, very quick glance at his face." Grant stressed that he was not looking at the man's face but instead focused on his hands. Grant said he "kept looking at his hands at all times \* \* \*." He did not see a gun. Grant did not know whether the man had facial hair. He explained that this was because he "just took quick glances of him." Grant said, "I ain't look at him right in the face like that, face to face like that."

{¶ 20} Grant stated that he was nervous and shaky. Grant's degree of attention at the time of the crime was affected by his nervousness. Some of Grant's inconsistent comments demonstrate that his attention was affected. For example, Grant believes that the events took 30 minutes, but then he also claimed

that he could not describe the person who robbed him because "it happened so quick" and "everything happened so fast."

{¶ 21} Moreover, Grant did not know the color of the person's clothes or whether he had facial hair because he said he "didn't pay no attention to all of that." Grant focused his attention instead on determining whether the person had a gun. Accordingly, we find that the first two factors demonstrate unreliability on the part of Grant's identification.

{¶ 22} This court finds it interesting that the state is not appealing Davis's identification, even though Davis was able to get a better look at the defendant and provide the police with a description.

{¶ 23} The last three factors—the accuracy of the witness's description of the defendant prior to the identification, the witness's level of certainty when identifying the defendant at the confrontation, and the length of time that elapsed between the crime and confrontation—demonstrate additional unreliability.

{¶ 24} The witness's description of the defendant prior to the identification was poor. In particular, Grant's level of certainly was also low, primarily due to the fact that he had only glanced at the robber for a matter of seconds and was therefore unable to get a good look at him. Finally, the time that elapsed between the crime and the confrontation was quite lengthy. The victim was not even interviewed by Lloyd until approximately ten weeks after the robbery.

{¶ 25} The first time Grant discussed the incident with the police was in March 2009. The RTA police report substantiates that Grant did not provide any identifying information about the person who robbed him. This is corroborated by Lloyd's testimony at the April 17, 2009 hearing, as quoted by the trial court's opinion, when Lloyd confirmed that Grant had not given a description of the person at all and that he had been unable to give a description.

{¶ 26} In sum, the pretrial identification procedures were unduly suggestive, and the five factors necessary to assess the reliability of the identification were not satisfied. The record demonstrates that the witness's opportunity to view the defendant at the time of the crime was negligible due to the fact that Grant had not been looking at the attacker's face—only his hands.

{¶ 27} At trial, Grant claimed that he was certain of his identification; however, there is substantial evidence demonstrating otherwise. Ten weeks had passed between the robbery and Grant's identification of Farrow from the photo array.

{¶ 28} Accordingly, under the totality of the circumstances, the identification procedure was both impermissibly suggestive and unreliable.

{¶ 29} The first assignment of error is overruled.

{¶ 30} Because the first assignment of error is dispositive, we do not reach analysis of the state's second assignment of error.

Judgment affirmed.

McMonagle, P.J., and Blackmon, J., concur.