[Cite as *State v. Thompson*, 2020-Ohio-486.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellant,       :

                             No. 107999

v.                                       :

TAYVON THOMPSON,                         :

    Defendant-Appellee.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 13, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-629864-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellant.*

Mark A. Stanton, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellee.*

RAYMOND C. HEADEN, J.:

{¶ 1} The state of Ohio ("the state") appeals from the trial court's decision granting defendant-appellee Tayvon Thompson's ("Thompson") motion to suppress. For the reasons that follow, we reverse.

## Procedural and Substantive History

{¶ 2} This case stems from events that occurred on June 14, 2018, around 11 p.m. Seven members of the Cleveland Police Department's Gang Impact Unit were patrolling the area surrounding 10841 Tacoma Avenue in Cleveland, Ohio in a caravan of unmarked vehicles. Officers were aware of recent shootings in the area and were patrolling in response to residents' desires for more attention to that street.

{¶ 3} Observing a group of approximately 8 to 12 people on the sidewalk, in the front yard, and on the porch of the house at 10841 Tacoma Avenue, officers pulled over with their lights and sirens activated. Detective James Skernivitz ("Detective Skernivitz") and Sergeant Alfred Johnson ("Sergeant Johnson") testified at the suppression hearing. Detective Skernivitz stated that as he was exiting his vehicle, he observed a group of males shooting dice on the sidewalk. Although the report from this incident made no mention of money being exchanged related to the dice game, both officers testified that they observed money. As officers approached, some of the group began to disperse. One young man, D.W., was observed going up the driveway to the backyard of the house, fumbling with his waistband and pulling out an object, and then coming back down the driveway, onto the porch, and into the house. Detective Skernivitz testified that D.W. was walking. Sergeant Johnson testified that D.W. was running and this caught his attention; this is reflected in the incident report.

{¶ 4} Sergeant Johnson asked Detective Skernivitz to follow D.W.'s path to the backyard. Detective Skernivitz did so, recovering a firearm presumed to have

just been discarded by D.W. Meanwhile, Sergeant Johnson went to the front porch in an attempt to speak with the homeowner to determine if D.W. lived at the house. According to Sergeant Johnson, as he walked up the steps to the porch, he saw Thompson on the porch to the left of the front door. At Thompson's feet, Sergeant Johnson saw the butt of a firearm that was partially covered by a coat or blanket. Sergeant Johnson then asked everyone on the porch to stand up and move away from the area. Sergeant Johnson asked Thompson several times to stand up and leave the porch, and Thompson declined to do so. In response to Thompson's failure to comply with this instruction, Sergeant Johnson ordered Thompson to stand and told him that he was under arrest. Thompson stood up and attempted to go through the front door of the house. Sergeant Johnson grabbed Thompson from behind and physically restrained him from entering the house. As both men fell to the ground, Thompson reached into his waistband and threw a gun inside the house. Thompson was placed under arrest for impeding the officers' investigation of D.W.

{¶ 5} As a result of the above, Thompson and D.W. were both taken into custody. The Cuyahoga County Grand Jury indicted Thompson on one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), and one count of receiving stolen property in violation of R.C. 2913.51(A).

{¶ 6} On October 26, 2018, Thompson filed a motion to suppress, arguing that the officers lacked reasonable articulable suspicion to justify his initial seizure. The state filed a brief in opposition to this motion, and the court held a hearing on the suppression motion on November 27, 2018.

{¶ 7} On December 11, 2018, the court granted Thompson's motion to suppress, finding that the state failed to demonstrate a reasonable articulable suspicion of criminal activity by Thompson to justify his initial stop and detention. The court also found that police lacked probable cause to arrest Thompson.

{¶ 8} The state appeals, presenting a single assignment of error for our review.

**Law and Analysis**

{¶ 9} In the state's sole assignment of error, it argues that the trial court erred in granting Thompson's motion to suppress. We review a trial court's decision on a suppression motion using a mixed standard of review. *State v. Riedel*, 2017-Ohio-8865, 100 N.E.3d 1155, ¶ 30 (8th Dist.). Because the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate witness credibility, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*, citing *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994), and *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court's application of the law to its factual findings is reviewed de novo. *Id.*, citing *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100.

{¶ 10} The Fourth and Fourteenth Amendments to the United States Constitution prohibit warrantless searches and seizures. Warrantless searches are per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Evidence obtained from an

unreasonable search or seizure must be suppressed. *Mapp v. Ohio*, 367 U.S. 643, 651, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**{¶ 11}** One well-known exception to the Fourth Amendment's warrant requirement is an investigative stop. In *Terry v. Ohio*, the United States Supreme Court held that an officer may stop an individual when the officer has a reasonable suspicion, supported by specific and articulable facts and rational inferences from those facts, that the individual is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion justifying a *Terry* stop requires something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Cleveland v. Maxwell*, 8th Dist. Cuyahoga No. 104964, 2017-Ohio-4442, ¶ 19, quoting *Terry* at 27. Courts reviewing whether an officer had a reasonable articulable suspicion must consider the totality of the circumstances "'as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Id.*, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶ 12}** At the suppression hearing, Sergeant Thompson justified his arrest of Thompson by explaining that Thompson's refusal to comply with an order to leave the porch was impeding the officer's investigation of D.W., who had just discarded a firearm and ran into the house. The Supreme Court's holding in *Terry* is as follows:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be

> armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry* at 30. Further, the Ohio Supreme Court has held that in viewing the totality of circumstances when determining the reasonableness of a search or seizure, courts may consider such factors as (1) the location of the investigation being a high crime area; (2) the time of day; (3) the officer's experience training related to drug transactions and weapon activity; (4) the officer's knowledge of how these transactions occur; (5) the officer's observations of any furtive movements; (6) the officer's experience of recovering weapons or drugs when an individual makes furtive movement; and (7) the officer being out of his or her vehicle and away from protection. *State v. Cooper*, 8th Dist. Cuyahoga No. 104599, 2017-Ohio-970, ¶ 13, citing *State v. Bobo*, 37 Ohio St.3d 177, 179, 524 N.E.2d 489 (1988).

{¶ 13} Here, officers in the gang impact unit were patrolling a high crime area after 11 p.m., and at the beginning of this incident they observed D.W. run into the backyard as they approached in order to discard a firearm. As Sergeant Johnson approached the porch to investigate the situation, he observed an unsecured firearm on the floor of the porch next to Thompson and within Thompson's reach. In an attempt to secure the area and continue his investigation of D.W., Sergeant Johnson ordered everyone off the porch in an attempt to secure the area and continue his

investigation. Thompson failed to comply with the officer's instructions, which were issued in a reasonable attempt to secure the area and continue his investigation.

{¶ 14} In light of these circumstances, we find that Sergeant Johnson had a reasonable, articulable suspicion that Thompson was engaged in criminal activity. Further, we find that Thompson's conduct following Sergeant Johnson's approach of the porch — failing to comply with instructions and thereby effectively impeding an investigation, attempting to flee the porch when he was ordered to stand, and throwing a loaded firearm into the house — constitutes probable cause for his arrest.

{¶ 15} We agree with the trial court that the testimony presented at the suppression hearing does not support the state's assertion that officers observed money changing hands during a late night dice game. We also acknowledge that Thompson's conduct at the outset of this incident — sitting on his porch — cannot on its own be characterized as criminal or even suspicious. Our conclusion does not depend on the state's assertion that there was an illegal dice game taking place. Further, we do not analyze Thompson's conduct in a vacuum. As discussed above, we consider the totality of the circumstances; this includes Thompson's proximity to a firearm and his failure to comply with Sergeant Thompson's instructions to leave the porch. For the foregoing reasons, the state's assignment of error is sustained.

{¶ 16} Judgment reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS (WITH SEPARATE CONCURRING OPINION);
PATRICIA ANN BLACKMON, P.J., DISSENTS (WITH SEPARATE DISSENTING OPINION)

FRANK D. CELEBREZZE, JR., J., CONCURRING:

{¶ 17} I concur with the majority's resolution of the state's sole assignment of error. I write separately to emphasize that based on the totality of the circumstances, Sergeant Johnson's conduct and the commands he issued to Thompson were both reasonable and reasonably calculated to secure the area of the porch and ensure the safety of the officers on scene.

{¶ 18} Sergeant Johnson testified about his observations upon walking onto the porch:

> Well, I noticed the people on the porch and in my approach I looked down, I looked of course to check my area, check the area for my own safety. I saw the firearm underneath — the butt of the firearm underneath the jacket. At that point I didn't want to proceed to the door without — I mean knowing that I had a firearm right behind me that's unsecured and knowing we have other people on the porch.

(Tr. 59.) Sergeant Johnson explained that after he observed the rifle on the porch:

I asked everyone to stand up and essentially move away from the area. I want to put them between me and the firearm and so I could make the firearm safe. Well, actually, and I wanted to also get to that door. And I don't know who's behind the door and I don't know what's going on with the person that went into the house [D.W.].

(Tr. 59-60.)

{¶ 19} Finally, Sergeant Johnson asserted that he wanted to move the individuals on the porch away from the rifle "[s]o that I don't get shot or no one reaches for the gun, or no one — myself or any of my guys even think that someone's reaching for the gun." (Tr. 60.)

{¶ 20} Until the rifle had been secured, Sergeant Johnson had a legitimate and reasonable basis upon which to fear for his own safety and the safety of the other officers on scene. Although Thompson was not holding or reaching for the rifle, he was sitting close enough such that he could have grabbed the rifle — becoming armed and presently dangerous — at any moment.

{¶ 21} Detective Skernivitz, described the rifle that was recovered from the porch as an "AK47 type rifle." (Tr. 22.) Detective Skernivitz, a 20-year veteran of the Cleveland Police Department, testified that based on his training and experience, he would "[s]ecure" and "recover" an unsecured "AK47 type rifle" sitting in plain view. (Tr. 23.)

{¶ 22} For all of these reasons, I would find that Sergeant Johnson's fear for his own safety and the safety of the officers on the scene was reasonable based on the totality of the circumstances, and that he was entitled to secure the porch and

the rifle to protect himself before continuing to investigate D.W. and the gun he discarded in the backyard.

PATRICIA ANN BLACKMON, P.J., DISSENTING:

**{¶ 23}** I respectfully dissent from the majority's opinion in this case, and I would find no error with the trial court's granting Thompson's motion to suppress.

**{¶ 24}** Thompson was sitting on his front porch when the police arrested him; he made no furtive movements and was not observed to be engaging in any illegal activity. The trial court concluded that the state did not meets its burden of demonstrating a reasonable, articulable suspicion of criminal activity required to justify a *Terry* investigatory stop. Reasonable suspicion requires something more than an "inchoate and unparticularized suspicion or hunch." *Terry*, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. I agree with the trial court.

**{¶ 25}** Furthermore, I do not find the probable cause required to justify Thompson's arrest for impeding an investigation. Thompson did not move from his own front porch when he was ordered by the police officer. I do not see how this impedes the investigation of another man who was allegedly seen throwing an object from his waistband into the yard.

**{¶ 26}** Therefore, I would affirm the trial court's granting Thompson's motion to suppress.