JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Jason Bostick ("Bostick") appeals the trial court's denial of his motion to suppress evidence. We find no merit to the appeal and affirm.
 {¶ 2} Bostick was indicted in a four-count indictment that included one count of possession of drugs, two counts of drug trafficking, and one count of possessing criminal tools. Bostick filed a motion to suppress claiming drugs and money were confiscated from him pursuant to an illegal search and seizure of his person. The court held a hearing on the motion and the following evidence was presented.
 {¶ 3} Det. Benjamin McCully testified that he was a detective in the Cleveland police strike force and had been a police officer with the Cleveland Police Department for 12 years. At the time of his testimony, McCully had made approximately 1,000 drug arrests in his career.
 {¶ 4} On May 1, 2002, McCully was patrolling the area of East 105th Street between Superior and St. Clair Avenues in response to drug complaints. According to McCully, this area is "one of the worst" areas in the City for drug sales. McCully was wearing a black shirt with gold lettering across the chest which spelled "police." The word "police" was also written in six-inch letters on the back. He was also wearing a hat labeled "police."
 {¶ 5} McCully testified that he observed Bostick and another male engage in a conversation in the parking lot located at 1076 East 105th Street. While he was watching the two men, he witnessed a "hand exchange" in which Bostick gave something to or received something from the other individual. Although McCully testified he believed this hand exchange was "most likely a drug transaction," he admitted on cross-examination that it looked "just like a handshake."
 {¶ 6} Believing he had just witnessed a drug transaction, McCully and another police officer in a second car approached Bostick and the other man, who was never identified.[1] When Bostick noticed the undercover police cars approaching him, he attempted to walk away. McCully pulled his car up to Bostick and exited the car when he heard someone say, "Get the guy in the black." Bostick was wearing a black sweatshirt. McCully exited the car quickly and grabbed Bostick by the arm because he thought he was going to run away. The other car stopped the unidentified man.
 {¶ 7} When McCully grabbed Bostick's arm, he felt something hard in his sleeve. After McCully patted him down for any weapons, he asked Bostick to roll up his sleeve because he believed Bostick was hiding drugs in his sleeve. McCully discovered 26 rocks of crack cocaine (4.25 grams) in Bostick's sleeve and arrested him.
 {¶ 8} After the court overruled Bostick's motion to suppress, Bostick pled no contest and the court found him guilty on all four counts in the indictment.
 {¶ 9} Bostick raises three assignments of error on appeal. In his first and second assignments of error, he argues that McCully illegally searched and seized him in violation of the Fourth Amendment because McCully lacked the requisite reasonable suspicion, based on articulable facts, that criminal activity was afoot. In his third assignment of error, Bostick argues the evidence adduced at the hearing did not justify McCully's "manipulation and seizure" of the object he felt in Bostick's sleeve. Because the merit of all three assignments of error turns on whether McCully had the requisite reasonable suspicion to justify the stop and frisk of Bostick, all three assignments of error will be addressed together.
 {¶ 10} In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, 277; State v. Fanning
(1982), 1 Ohio St.3d 19, 20. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See Statev. Curry, 95 Ohio App.3d 93, 96 (Citing State v. Schiebel (1990),55 Ohio St.3d 71). However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. Id. (Citing State v.Claytor (1993), 85 Ohio App.3d 623, 627).
 {¶ 11} In the seminal case of Terry v. Ohio, the United States Supreme Court explained that the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Terry v. Ohio (1968), 392 U.S. 1, 9; see, also,State v. Andrews (1991), 57 Ohio St.3d 86. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a reasonably prudent police officer to believe that the person stopped has committed or is committing a crime. See Terry, supra, at 27.
 {¶ 12} A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot. United States v. Arvizu
(2002), 534 U.S. 266; Terry, supra, at 27. However, reviewing courts should not "demand scientific certainty" from law enforcement officers.Illinois v. Wardlow (2000), 528 U.S. 119, 125. In deciding whether reasonable suspicion exists, courts must examine the "`totality of the circumstances' of each case to determine whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." Arvizu, supra (quoting United States v. Cortez (1981),449 U.S. 411, 417-18); State v. Bobo (1988), 37 Ohio St.3d 177, at syllabus, paragraph one, citing State v. Freeman (1980), 64 Ohio St.2d 291. Under this totality of the circumstances approach, police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Arvizu
(quoting Cortez, 449 U.S. at 418). Thus, a court reviewing the officer's reasonable suspicion determination must give due weight to the officer's trained eye and experience and view the evidence through the eyes of those in law enforcement. Id. See, also, State v. Andrews (1991),57 Ohio St.3d 86, 87-88.
 {¶ 13} Under the circumstances presented in the instant case, we find the stop and frisk were reasonable. McCully and other members of the strike force were assigned to investigate complaints of drug activity in an area known to be "one of the worst" in the city for drug sales. McCully testified that he witnessed Bostick engage in a hand transaction with another individual. Based on his law enforcement experience, he believed this was a drug transaction. When the police approached Bostick to investigate whether a drug transaction had just taken place, McCully thought Bostick was going to run away. Based on this testimony, we find McCully articulated facts which supported his reasonable suspicion and thus justified the stop and frisk.
 {¶ 14} Having found that the stop and frisk were lawful, we now turn to the issue involving McCully's handling of the object in Bostick's sleeve. Bostick argues McCully's further manipulation of the object in his sleeve exceeded the scope of a lawful Terry search.
 {¶ 15} In Minnesota v. Dickerson (1993), 508 U.S. 366, the United States Supreme Court held that the Fourth Amendment permits the seizure of nonthreatening contraband detected through a police officer's sense of touch during an otherwise lawful Terry search. Id. at 376. In other words, the Court in Dickerson explained that a police officer may enter a suspect's pockets during the course of a Terry pat-down on the basis of something other than a belief that the individual is carrying a weapon. Id.
 {¶ 16} Drawing an analogy to the plain view doctrine, theDickerson Court held that when police are conducting a lawful Terry-type search, they may seize nonthreatening contraband when its incriminating nature is "immediately apparent" to the searching officer through his sense of touch. Id. However, the Dickerson court cautioned that the officer may not manipulate the object, which he has previously determined not to be a weapon, in order to ascertain its incriminating nature. Id. at 378. The incriminating nature of the object must be "immediately apparent" and give rise to probable cause to believe the item is contraband. Id.
 {¶ 17} In the instant case, McCully testified that when he grabbed Bostick's arm, near the wrist, he felt something hard in his sleeve and thought it was drugs. (Tr. 13). McCully explained that he then patted Bostick down to make sure he did not have any weapons. He asked Bostick to roll up his sleeve. Although it is not clear from the transcript whether Bostick rolled up his sleeve or whether McCully rolled it up, McCully stated that when he felt a hard substance in Bostick's sleeve he thought it was crack cocaine. (Tr. 27). The incriminating nature of that object was immediately apparent to him. Therefore, we find that both the stop and frisk were lawful as well as McCully's seizure of the crack cocaine hidden in Bostick's sleeve. Accordingly, all three assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and DIANE KARPINSKI, J. concur.
[1] This individual was never identified because no contraband was found on his person and he was released at the scene.