OPINION
{¶ 1} Defendant-appellant David Green appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of possession of cocaine, after the trial court accepted appellant's plea of no contest and entered a finding of guilty. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On July 12, 2004, the Stark County Grand Jury indicted appellant on one count of possession of cocaine, in violation of R.C.2925.11(A)(C)(4)(b). Appellant entered a plea of not guilty to the charge at his arraignment on August 6, 2004. Appellant filed a motion to suppress. The trial court conducted a hearing on the motion on September 13, 2004, and September 23, 2004. The following evidence was adduced at the hearing.
 {¶ 3} Officer Jeffrey Spahr of the Canton Police Department testified, on June 8, 2004, at approximately 6:30 p.m., he assisted the Ohio Adult Parole Authority with a parole search of the residence at 1226 Worley NW, Canton, Ohio. While inside the house, Spahr observed an individual drive a vehicle into the backyard. Spahr learned from the male resident the individual was appellant, his sister's boyfriend. Spahr watched appellant remove a propane tank from the trunk of his vehicle, and walk toward the house. Spahr proceeded outside. Although the parole search concerned a female, Spahr explained he had received prior complaints about a white male involved in drug activity at the location; therefore, he approached appellant. Spahr advised appellant he was a police officer, and they were at the residence conducting a parole search. The officer asked appellant if he had any guns, knives, or any illegal drugs on his person, to which appellant answered, "No".
 {¶ 4} Spahr asked appellant for consent to search his person. Appellant responded, "Yes". Spahr reached into appellant's right pants pocket and pulled out a plastic bag containing what the officer believed to be cocaine, as well as a small wad of money. Spahr ordered appellant to the ground, then cuffed and secured him. Spahr finished searching appellant's person. Spahr asked appellant for consent to search his vehicle, which appellant gave. The officer did not find anything in the vehicle. Appellant was transported to the police department and charged with possession of cocaine.
 {¶ 5} On cross-examination, Spahr acknowledged a Mr. Vissoc, a white male, lived at the residence. Spahr stated when he approached appellant, he (the officer) had his weapon drawn and at his side. Spahr could not say whether Mr. Beebe, the parole officer, had his weapon drawn as Beebe was a few steps behind him. Spahr stated after he "made notice [appellant] wasn't doing anything, [appellant] was just standing there", he returned his gun to the holster. Spahr noted his gun was holstered when he asked appellant for consent to search his person, and remained holstered during the search.
 {¶ 6} Parole Officer Michael Beebe of the State of Ohio Adult Parole Authority testified, after he was contacted regarding the Worley residence, he requested the assistance of the police department vice squad in conducting the June 8, 2004 search. Beebe recalled being in the family room at the front of the residence when he observed an older style car pull into the driveway. Officer Spahr exited the residence, and Beebe was approximately three or four steps behind him. Beebe noted Spahr made contact with appellant, identified himself, and asked appellant if he had "anything on him", which appellant indicated he did not. According to Beebe, Spahr asked appellant for consent to search his person. Once appellant consented, Spahr commenced a pat down search, which resulted in the discovery of a bag of cocaine. Beebe specifically heard appellant consent to the search. Beebe explained he and Spahr approached appellant because of the allegations of drug activity at the residence. Beebe did not have his weapon drawn when he approached appellant, but could not recall if Officer Spahr had his weapon drawn. Beebe also could not remember if Spahr asked appellant if he had contraband on him, but acknowledged he (Beebe) was not paying attention to the conversation.
 {¶ 7} Following the presentation of evidence, the trial court took the matter under advisement. Via Judgment Entry filed October 27, 2004, the trial court overruled appellant's motion to suppress, finding appellant was engaged in a consensual encounter with the officers and voluntarily consented to the search of his person. Thereafter, on November 1, 2004, appellant entered a plea of no contest to the charge. After accepting the change of plea, the trial court found appellant guilty. The trial court sentenced appellant to a six month jail term via Journal Entry filed December 13, 2004.
 {¶ 8} It is from this conviction and sentence appellant appeals, raising as his sole assignment of error:
 {¶ 9} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE ILLEGALLY OBTAINED PHYSICAL EVIDENCE.
 I {¶ 10} In his sole assignment of error, appellant asserts the trial court erred in denying his motion to suppress.
 {¶ 11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See: State v. Fanning(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486;State v. Guysinger (1993), 86 Ohio App.3d 592.
 {¶ 12} Secondly, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. See:State v. Williams (1993), 86 Ohio App.3d 37.
 {¶ 13} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v.Claytor (1993), 85 Ohio App.3d 623, 627; and State v. Guysinger(1993), 86 Ohio App.3d 592. As the United States Supreme Court held inOrnelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." Appellant maintains the trial court incorrectly decided the ultimate issues raised in the motion to suppress, i.e., whether the encounter was consensual and whether appellant's consent was voluntarily given.
 {¶ 14} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 15} A stop does not have to meet the Terry test if it involves a consensual encounter. A consensual police encounter versus a Terry stop is explained in State v. Taylor (1995), 106 Ohio App.3d 741:
 {¶ 16} "The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. * * * The request to examine one's identification does not make an encounter nonconsensual. * * * Nor does the request to search a person's belongings. * * * The Fourth Amendment guarantees are not implicated in such an encounter unless the policeofficer has by either physical force or show of authority restrained theperson's liberty so that a reasonable person would not feel free todecline the officer's requests or otherwise terminate the encounter. * * * Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the next two Supreme Court categories.
" * * *
 {¶ 17} "The second type of encounter is a 'Terry stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. * * * A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions.
" * * *
 {¶ 18} "The third type of encounter involves a seizure that is the equivalent of an arrest. To perform such a seizure the police officer must have probable cause." Id. at 747-748. (Citations omitted). (Emphasis added).
 {¶ 19} In the instant action, Officer Spahr stated when he approached appellant, he (Spahr) had his weapon drawn at his side. Spahr acknowledged the gun was probably clearly visible to appellant. Spahr specifically recalled his gun was holstered when he conducted the pat down search of appellant. The officer further noted his gun was holstered when he asked appellant for consent to conduct the search. Spahr testified: "It was in the holster by that point [i.e., when the officer asked appellant if he could search him]. At that time, after I made notice that he wasn't doing anything, he was just standing there, I put my gun away." September 13, 2004 Tr. at 9-10.
 {¶ 20} We find because the officer holstered his weapon prior to asking appellant's consent to search and prior to the actual pat down, the officer's show of authority restraining appellant's "liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter" ended and any custodial aspect of the encounter dissipated. Accordingly, we find the encounter was consensual, and appellant's consent to the search was voluntarily given.
 {¶ 21} Appellant's sole assignment of error is overruled.
 {¶ 22} The judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, P.J., Farmer, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.