OPINION
{¶ 1} Defendant-appellant Michael Kaercher appeals his conviction entered by the Licking County Municipal Court for operating a motor vehicle with a prohibited concentration of alcohol in his breath, in violation of R.C. 4511.19(A)(1)(d), after the trial court found appellant guilty following his entering a no contest plea. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On December 29, 2004, appellant was cited on the aforementioned charges. Appellant appeared before the trial court on January 5, 2005, and entered a plea of not guilty. On January 20, 2005, appellant filed numerous motions to suppress relative to the validity of the stop and the results of the BAC DataMaster test. The State filed a motion in opposition thereto. The trial court conducted a suppression hearing on February 25, 2005.
 {¶ 3} At the hearing, Reserve Patrolman Mark Davis of the Heath Police Department testified he was on patrol duty on December 29, 2004, at approximately 6:15pm, when he was dispatched to the Fazoli's restaurant on Hebron Road in Heath, Ohio, because of a citizen complaint. The dispatcher advised the officer a Fazoli's employee contacted the police regarding a possible drunk driver in the drive-thru lane. Ptl. Davis saw the vehicle with the plate number he had been given, parked at the end of the drive-thru lane. Davis parked his cruiser, exited, and approached the driver's side of the vehicle. When the driver, who was later identified as appellant, rolled down the window, Davis detected a strong odor of alcohol emanating from the vehicle. Davis advised appellant the police department had received a call he (appellant) was possibly under the influence of alcohol and the officer was there to assess the situation. Davis noticed appellant's speech was slurred and his eyes were glassy. Davis instructed appellant to exit the vehicle, and noticed appellant was unsteady on his feet. Davis asked appellant to perform field sobriety tests. When appellant cited the alphabet, his speech was slurred and he repeated the letters Q, R, S, T, U, V before completing the test. Appellant was unable to perform the nose touch test as he was unable to maintain his balance.
 {¶ 4} Sgt. Norman Ream testified he was also dispatched to the Fazoli's restaurant on Hebron Road. When he arrived, Ptl. Davis was speaking with appellant. Sgt. Ream parked his cruiser and approached Ptl. Davis, who advised him of what he had observed. Ptl. Davis asked Sgt. Ream to perform the horizontal gaze nystagmus test on appellant. When Sgt. Ream approached appellant, he immediately noticed a strong odor of alcohol emanating from his person, and his speech was distinctly slurred. Prior to administering the horizontal gaze nystagmus test, Sgt. Ream instructed appellant not to move his head, just his eyes. Although appellant indicated he understood the instructions, he was unable to follow them. Appellant was also unable to perform the one leg stand test. Thereafter, Ptl. Davis placed appellant under arrest.
 {¶ 5} Ptl. Davis transported appellant to the Heath Police Department. Appellant agreed to submit to a breath test. Because of a power outage, the Heath Police Department BAC DataMaster was out of operation. The officers took appellant to the Newark Police Department for the test. The first test was invalid. Sgt. Ream could not recall whether the test was invalid due to the machine timing out or appellant not blowing hard enough. Although Sgt. Ream could not specifically remember placing a new mouth piece on the machine prior to the second test, he noted it was his practice to place a fresh mouth piece on the machine after a failed attempt, and he could not recall ever deviating from that procedure. The second test obtained a result of .138 grams of alcohol per 210 liters of breath. On cross-examination, Sgt. Ream stated he did not see extra instructions on the wall over the Newark Police Department's machine. Sgt. Ream conducted a test on another subject after he finished appellant's test. He gave this subject three tests, explaining she was not performing it correctly.
 {¶ 6} Patrolman Charles Roberts of the Newark Police Department testified he is a senior operator for the BAC DataMaster. Ptl. Roberts testified he last calibrated the machine on December 26, 2004, and the machine operated properly. On cross-examination, Ptl. Roberts noted Ptl. Oberfield, the other senior operator, had placed a sign above the BAC DataMaster machine advising the operator to carefully remove the mouthpiece in order to avoid disconnecting the hose. Ptl. Oberfield placed a clamp on the tube to prevent it from disconnecting. On cross-examination, defense counsel attempted to show Ptl. Roberts was unsure of whether the calibration solution used during appellant's test was fresh solution, questioning whether the bottles were labeled appropriately.
 {¶ 7} Via Judgment Entry filed March 14, 2005, the trial court overruled and denied all of the branches of appellant's motions to suppress. Thereafter, appellant appeared before the trial court, withdrew his plea of not guilty, and entered a plea of no contest to the charge. After accepting appellant's plea, the trial court found appellant guilty, and imposed a thirty day jail term. The trial court suspended twenty-seven of the thirty days and imposed a one year license suspension.
 {¶ 8} It is from this conviction appellant appeals, raising the following assignments of error:
 {¶ 9} "I. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT-DEFENDANT'S MOTION TO SUPPRESS THE STOP.
 {¶ 10} "II. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT-DEFEDNANT'S MOTION TO SUPPRESS/IN LIMINE THE BAC DATAMASTER TEST RESULTS."
 I {¶ 11} In his first assignment of error, appellant maintains the trial court erred in denying his motion to suppress the stop as Ptl. Davis did not have reasonable articulable suspicion to conduct an investigatory stop.
 {¶ 12} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19;State v. Klein (1991), 73 Ohio App.3d 486; State v. Guysinger(1993), 86 Ohio App.3d 592.
 {¶ 13} Secondly, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. See, State v. Williams (1993),86 Ohio App.3d 37.
 {¶ 14} Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96; State v. Claytor(1993), 85 Ohio App.3d 623, 627; and State v. Guysinger(1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657,134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 15} Essentially, appellant argues the trial court incorrectly decided the ultimate issues raised in the motion to suppress, i.e., whether the encounter was consensual or a stop in which appellant's Fourth Amendment rights are implicated.
 {¶ 16} In Terry v. Ohio (1968), 392 U.S. 1, 22,88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court determined "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 17} A stop does not have to meet the Terry test if it involves a consensual encounter. A consensual police encounter versus a Terry stop is explained in State v. Taylor (1995),106 Ohio App.3d 741:
 {¶ 18} "The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. * * * The request to examine one's identification does not make an encounter nonconsensual. * * * Nor does the request to search a person's belongings. * * * The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. * * * Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the next two Supreme Court categories.
 {¶ 19} "* * *
 {¶ 20} "The second type of encounter is a Terry stop or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. * * * A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions.
 {¶ 21} "* * *
 {¶ 22} "The third type of encounter involves a seizure that is the equivalent of an arrest. To perform such a seizure the police officer must have probable cause." Id. at 747-748. (Citations omitted). (Emphasis added).
 {¶ 23} We find the encounter between Ptl. Davis and appellant was consensual in nature. Ptl. Davis did not effectuate a stop of appellant. The officer approached appellant who was sitting in his parked vehicle with the engine running at a restaurant open to the public. A law enforcement officer does not need reasonable suspicion merely to approach an individual to make reasonable inquiries. State v. Phillips, Licking App. No. 2004CA00093,2005-Ohio-3822. Because the encounter was consensual, appellant's Fourth Amendment rights were not implicated and the trial court did not err in overruling his motion to suppress on this issue.
 {¶ 24} Appellant's first assignment of error is overruled.
 II {¶ 25} In his second assignment of error, appellant contends the trial court erred in denying his Motion to Suppress/Motion in Limine the results of the BAC DataMaster test. Appellant asserts the machine had been altered by the placement of a clamp on the hose; therefore, the test was not conducted in substantial compliance with the Ohio Department of Health regulations.
 {¶ 26} Our standard of review is set forth in assignment of error I, supra.
 {¶ 27} Absent a showing of prejudice to a defendant, the results of a urine-alcohol test administered in substantial compliance with Ohio Adm. Code 3701-53-05 are admissible in a prosecution under R.C. 4511.19. State v. Plummer (1986),22 Ohio St.3d 292, syllabus.
 {¶ 28} The evidence presented at the hearing revealed the BAC DataMaster machine had been calibrated less than one week before appellant's breath test, and was working properly. Although the clamp had been attached to the hose, Ptl. Roberts testified such did not affect the internal workings or external workings of the machine. In fact, Ptl. Roberts noted, if the clamp had affected the flow of air to the machine, the machine would not have completed the cycle and the test results would have been invalid. Appellant presented no evidence to establish his test results was affected by this alteration.
 {¶ 29} Appellant's second assignment of error is overruled.
 {¶ 30} The judgment of the Licking County Municipal Court is affirmed.
Hoffman, P.J., Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Municipal Court is affirmed. Costs assessed to appellant.