OPINION *Page 2 
{¶ 1} On June 10, 2008, appellant, Scott Haidet, was charged with possession of marijuana in violation of R.C. 2925.11. Said charge arose following an investigation by City of Canton police officers after observing appellant make an illegal u-turn and exhibit erratic driving behaviors.
 {¶ 2} On July 11, 2008, appellant filed a motion to suppress, claiming an illegal stop and search of his person and his vehicle. A hearing was held on July 17, 2008. By judgment entry filed July 31, 2008, the trial court denied the motion.
 {¶ 3} On August 1, 2008, appellant pled no contest to the charge. By judgment entry filed August 8, 2008, the trial court found appellant guilty, fined him $100, and suspended his driver's license for six months.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS AS THE ARRESTING OFFICER DID NOT HAVE SPECIFIC AND ARTICULABLE FACTS JUSTIFYING A WARRANTLESS SEARCH OF THE APPELLANT'S VEHICLE."
 I {¶ 6} Appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. *Page 3 
In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v.Klein (1991), 73 Ohio App.3d 485; State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor (1993),85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held inOrnelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 8} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory *Page 4 
stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 9} In denying appellant's motion to suppress, the trial court specifically found the following:
 {¶ 10} "Officer Taylor opened the defendant's car door and noticed a strong smell of raw marijuana when he opened the door. The officers found a small amount of marijuana in the search of the vehicle. It was the officers' intention to write the defendant a traffic citation and release him. The officers conducted a Terry search of the vehicle for their safety prior to releasing the defendant because of his actions in attempting to elude them, his lack of truthfulness about where he was going and his lack of cooperation with them during the pat down where he continually moved around. Also, while seated in the back seat of the cruiser, the defendant was attempting to hide something in his socks. He further hid his keys while sitting in the back of the cruiser. Defendant's actions caused the officers to believe that the defendant was dangerous and could gain immediate control of weapons upon release to his vehicle." Judgment Entry filed July 31, 2008.
 {¶ 11} On June 10, 2008, at approximately 2:30 a.m., Officer Zachary Taylor and his partner, Officer Michael Volpy, observed appellant make an illegal u-turn. T. at 6. The officers followed the vehicle and observed "erratic driving behavior." T. at 8. Once he stopped, appellant exited his vehicle and told the officers he was at the location to visit a friend, Mark Weigand. T. at 9-10. Upon investigation, the occupants of the residence denied knowing appellant or Mr. Weigand. T. at 10. Appellant was patted *Page 5 
down and placed in the back of the cruiser "[b]ecause of his evasive behaviors and the way he was acting. His story wasn't adding up. Just for our safety as well. We checked the exterior of his clothing, make sure he does not have any weapons on his person." T. at 11. During the pat down, appellant was "continually moving, asking several questions. He would not comply with our — us telling him to keep his hands on the car, stop moving around." Id.
 {¶ 12} Officer Taylor testified they were going to issue a traffic citation for the illegal u-turn and release appellant. T. at 12. However, Officer Taylor thought a "Terry pat down" on appellant's vehicle was warranted:
 {¶ 13} "Because of his actions, the story not adding up. If he was lying about where he was going, what he was doing at that house, his immediate evasive actions and his change of behavior, his driving behavior was changed when we observed him and he observed us. Um, just his whole — the whole situation of him being evasive. Wanted to ensure our own safety and the public safety that he did not have a weapon or anything in that car that we needed to know about." Id.
 {¶ 14} Appellant refused to give the officers consent to search his vehicle, and claimed the keys were locked inside the car. T. at 13. Officer Taylor knew from the pat down search that the keys were in appellant's pocket, "which again sets off a red flag that something is not right here." Id. As Officer Taylor spoke with appellant about the keys, Officer Taylor observed appellant "reach down near his foot, place what appears to be a set of keys on the floor of the back of the police car. At that time I pull him out of the police car. * * * The keys are laying right there on the floor of the police car." T. at 13-14. *Page 6 
Upon unlocking the vehicle and opening the door, Officer Taylor noticed a "strong smell of raw marijuana." T. at 14.
 {¶ 15} The facts cited by the trial court in making its decision to deny the motion to suppress are present in the record. The gravamen of this case is whether such facts and circumstances warranted the non-consensual search of the vehicle for officer safety reasons.
 {¶ 16} In support of the trial court's decision, the state cites the case of Michigan v. Long (1983), 463 U.S. 1032, 1049-1050, wherein the United States Supreme Court extended the Terry "stop and frisk" exception to a warrant to include vehicles:
 {¶ 17} "Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on `specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.* * * See Terry,392 U.S., at 21, 88 S.Ct., at 1880. `[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' Id., at 27, 88 S.Ct., at 1883. If a suspect is `dangerous,' he is no less dangerous simply because he is not arrested. If, while conducting a legitimate *Page 7 Terry search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." (Footnote omitted.)
 {¶ 18} In the case sub judice, appellant's driving behavior was erratic, he lied to the officers about visiting a friend, he was evasive during the pat down search of his person, and he lied about the car keys. Considering that the officers were about to release appellant to return to his vehicle, all of the cited facts support the conclusion that officer safety was an issue.
 {¶ 19} Upon review, we concur with the trial court's analysis of the facts and the logical conclusions garnered from these facts. The trial court did not err in denying appellant's motion to suppress.
 {¶ 20} The sole assignment of error is denied.
 {¶ 21} The judgment of the Canton Municipal Court of Stark County, Ohio is hereby affirmed.
 Farmer, J., Gwin, P.J. and Wise, J. concur. *Page 8 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court of Stark County, Ohio is affirmed. *Page 1