[Cite as *State v. Tharp*, 2015-Ohio-4267.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2015 CA 00018 |
| RICHARD THARP | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Canton Municipal
                             Court, Case No.  2014 TRC 7856


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      October 13, 2015


APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

JOSEPH MARTUCCIO                         CRISTIN ROUSH
CANTON LAW DIRECTOR                      PUBLIC DEFENDER'S OFFICE
TYRONE D. HAURITZ                        201 Cleveland Avenue Sw
CANTON CITY PROSECUTOR                   Suite 104
KATIE ERCHICK                            Canton, Ohio  44702
ASSISTANT PROSECUTOR
218 Cleveland Avenue SW, PO Box 24218
Canton, Ohio  44701-4218

*Wise, P. J.*

{¶1}  Appellant Richard Tharp appeals the decision of the Canton Municipal Court, Stark County, which denied his motion to suppress evidence in an OVI case.

{¶2}  Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS</u>

{¶3}  The relevant facts leading to this appeal are as follows:

{¶4}  On or about November 8, 2014, at approximately 11:36 p.m., Ohio State Highway Patrol Sergeant David Garber was traveling eastbound on Navarre Road, east of Dueber, in the city of Canton, when he observed a vehicle travel left of center. (Supp. T. at 5). Sgt. Garber turned around to follow the vehicle. (Supp. T. at 5, 12). Once behind the vehicle, Sgt. Garber observed the vehicle make an improper red light stop, stopping past the marked white stop bar line. (Supp. T. at 5). Sgt. Garber continued to follow the vehicle and observed the vehicle travel left of center for a second time, while making a right-hand turn from Dueber onto Navarre Road. (Supp. T. at 5). Sgt. Garber then initiated a traffic stop of the vehicle. (Supp. T. at 5).

{¶5}  Upon approaching the vehicle, Sgt. Garber detected an odor of both alcohol and marijuana. (Supp. T. at 6). Sgt. Garber also observed that Appellant, the driver, had bloodshot and glassy eyes. (Supp. T. at 6). Sgt. Garber requested Appellant step out of the vehicle. (Supp. T. at 6). Once out of the vehicle, Sgt. Garber continued to detect an odor of alcohol and marijuana coming from Appellant. When asked, Appellant admitted to earlier marijuana use, but denied drinking alcohol or using any other drugs that night. (Supp. T. at 6).

{¶6} Sgt. Garber then requested that Appellant perform field sobriety tests. (Supp. T. at 7). Sgt. Garber first conducted the Horizontal Gaze Nystagmus (HGN) test. Appellant demonstrated "zero clues out of the six possible clues" on this test. (Supp. T. at 7). This indicated to Sgt. Garber that Appellant was "more than likely not under the influence of alcohol, ... or any drug that would create nystagmus." (Supp. T. at 7). Next, Sergeant Garber administered the lack of convergence test, which Sergeant Garber is trained to administer, to determine whether an individual is under the influence of marijuana. (Supp. T. at 7). During this test, Sgt. Garber observed a lack of convergence, which indicated Appellant was under the influence of marijuana. (Supp. T. at 8). Next, Sgt. Garber administered the walk and turn test. (Supp. T. at 8). During this test, Appellant took seven steps forward instead of nine, he failed to count out loud as instructed, he raised his arms higher than six inches for balance, he stopped while he was turning, and he did not turn properly. (Supp. T. at 10). The last test Sgt. Garber administered was the one-leg stand test. (Supp. T. at 10). During this test, Appellant put his foot down twice, raised his arms higher than six inches for balance, hopped on one foot, and swayed. (Supp. T. at 10).

{¶7} On November 8, 2014, Appellant was charged with one count of OVI, in violation of R.C. §4511.19(A)(1)(a), as he refused to submit to a urine test, and one count of Driving Left of Center, in violation of R.C. §4511.25.

{¶8} On November 12, 2014, Appellant pled not guilty to the charge at his arraignment.

{¶9} On December 22, 2014, Appellant filed a Motion to Suppress.

{¶10} On January 7, 2015, a hearing was held on Appellant's motion. After hearing testimony and arguments, the trial court overruled Appellant's Motion.

{¶11} On January 22, 2015, Appellant came before the trial court and entered a change of plea to no contest to both charges. The trial court subsequently found Appellant guilty of both charges. On the OVI charge, the trial court sentenced Appellant to serve one hundred eighty (180) days in the Stark County Jail with all but three (3) days suspended on condition of Appellant's good behavior for two (2) years. (Sent. T. at 4). The trial court permitted Appellant to complete the Driver's Intervention Program in lieu of the jail sentence if the program was completed by March 23, 2015, and Appellant followed all recommendations of the program. (Sent. T. at 4). Appellant was also sentenced to pay a fine of six hundred twenty-five dollars ($625), to which a two hundred fifty dollar ($250) credit would be given if Appellant completed the Driver's Intervention Program. (Sent. T. at 4). Appellant's license was also suspended for one hundred eighty (180) days, effective from November 8, 2014. (Sent. T. at 5). On the second count Appellant was sentenced to pay court costs. (Sent. T. at 5).

{¶12} On February 3, 2015, Appellant filed a Motion for Stay of Execution of Sentence with the trial court, which was denied on February 25, 2015.

{¶13} On March 6, 2015, a Motion for Stay of Execution of Sentence was filed with this Court.

{¶14} On March 26, 2015, this Court granted a stay of sentence as it pertained to the Driver's Intervention Program.

{¶15} Appellant now appeals, raising the following Assignments of Error:

## ASSIGNMENTS OF ERROR

{¶16} "I. THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE SGT. GARBER'S STOP OF MR. THARP WAS NOT BASED ON REASONABLE ARTICULABLE SUSPICION AND CONSTITUTED AN UNREASONABLE SEIZURE.

{¶17} II. THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE SGT. GARBER'S REQUEST THAT MR. THARP EXIT HIS VEHICLE AND SUBMIT TO FIELD SOBRIETY TESTS (FSTs) WAS NOT BASED ON REASONABLE ARTICULABLE SUSPICION FOR CONTINUED DETENTION.

{¶18} III. THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE SGT. GARBER DID NOT HAVE PROBABLE CAUSE TO ARREST MR. THARP BASED ON THE TOTALITY OF THE CIRCUMSTANCES THAT NIGHT.

**I., II., III.**

{¶19} In his First, Second and Third Assignments of Error, Appellant argues the trial court erroneously denied his motion to suppress. We disagree.

{¶20} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibits the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

{¶21} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact.

Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. However, as the United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶22} In the case *sub judice*, Appellant herein argues that Sgt. Garber lacked reasonable, articulable suspicion to stop him or to request the performance of field sobriety tests. Appellant also contends that there was not probable cause to arrest him.

Traffic Stop

{¶23} There are two standards applied to determine whether police have legitimately stopped a vehicle. *State v. Weinheimer,* Warren App. No. CA2003–04–044, 2004–Ohio–801, ¶8. First, police may make an investigatory stop of a vehicle when they have a "reasonable articulable suspicion" criminal activity has occurred or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. *Id.*

{¶24} Second, police may stop a vehicle based on "probable cause" a traffic violation, even minor, has occurred or is occurring. *Dayton v. Erickson,* 76 Ohio St.3d 3,

11–12, 665 N.E.2d 1091, 1996–Ohio–431. Such is the case when an officer witnesses a traffic violation and then stops the motorist for this traffic violation.

**{¶25}** In the instant case, we find Sgt. Garber had legal authority to stop Appellant's vehicle. Sgt. Garber testified that he observed Appellant cross the center line twice and further observed the stop bar violation.

Field Sobriety Tests

**{¶26}** "Requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment. Courts have generally held that the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion that the driver is under the influence of alcohol in order to conduct a field sobriety test." *State v. Bright,* 5th Dist. Guernsey No. 2009–CA–28, 2010–Ohio–1111, ¶17, citing *State v. Knox,* 2nd Dist. Greene No. 2005–CA–74, 2006–Ohio–3039.

**{¶27}** In reviewing this issue, we apply a "totality of the circumstances" approach. *See, e.g., City of Fairfield v. Lucking,* Butler App. No. CA2002–12–303, 2004–Ohio–90, ¶ 8, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044.

**{¶28}** In support of his position, Appellant cites *State v, Keserich*, 5th Dist. Ashland County, Case No. 2014-CA-011, 2014-Ohio-5120. In *Keserich*, this Court reversed the decision of the trial court overruling Keserich's motion to suppress.

**{¶29}** In *Keserich*, the defendant was stopped for not having a light illuminating his rear license plate. Upon stopping Keserich, the officer observed bloodshot and watery eyes, and he admitted to having consumed two alcoholic beverages. Based on

these facts, the officer requested that Keserich perform field sobriety tests. This Court, under the facts in this case, found that defendant's bloodshot eyes could have been attributed to the fact that there were four or five other passengers in the car who were smoking. This Court found that this possible explanation for the bloodshot eyes, together with the stop being based solely an equipment violation and the lack of any observation of erratic driving, was not enough to form a basis to request performance of the field sobriety tests.

{¶30} We find this case to be distinguishable from *Keserich*, *supra*.

{¶31} In the instant case, as set forth in our recitation of facts, Sgt. Garber stopped Appellant for moving violations. He testified that he observed Appellant travel left of the center line twice and further observed an improper red light stop. Additionally, upon stopping Appellant, he observed that his eyes were bloodshot and glassy, and that there was an odor of alcohol and marijuana coming from the vehicle. Sgt. Garber continued to detect the odor of marijuana and alcohol once Appellant was outside of the vehicle. Appellant denied consuming alcohol but admitted to using marijuana that day. Additionally, it was 11:36 p.m. on a Saturday evening.

{¶32} Upon review, based on the above factors, we hold a reasonable basis existed for Sgt. Garber to ask Appellant to step out of his vehicle and proceed with field sobriety testing under the circumstances of this case.

Arrest

{¶33} We further find, based on the foregoing, that probable cause existed for the arrest.

**{¶34}** "The standard for determining whether the police have probable cause to arrest an individual for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonable trustworthy source of facts and circumstances to cause a prudent person to believe that the suspect was driving under the influence." *State v. Swope,* 5th Dist. Fairfield No. 08 CA 50, 2009–Ohio–3849, ¶ 22.

**{¶35}** The issue is whether appellant's actions and Sgt. Garber's observations lead to probable cause to arrest. We note each case is determined individually from the facts and observations presented.

**{¶36}** Here, based on the totality of the circumstances, including Sgt. Garber's observations as set forth above and Appellant's poor performance on all of the field sobriety tests, with the exception of the HGN test, we find that probable cause existed to arrest Appellant.

**{¶37}** We therefore hold the trial court did not err in denying the motion to suppress in this matter. Accordingly, Appellant's Assignments of Error are overruled.

**{¶38}** For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is affirmed.

By: Wise, P. J.
Delaney, J., and
Baldwin, J., concur.

JWW/d 1002